HOWARD BESSEY, pro ami, *vs.* NEWICHAWANICK COMPANY.

York.   Opinion March 27, 1900.

*Negligence.*

The plaintiff, seventeen years and two months old and of ordinary intelligence, had been employed in defendant's mill off and on for two years, first in the card-room, then as a spinner, and lastly for four weeks in the dye-room where he was, while at work, accidentally injured. Before this he had noticed how the work in the dye-room had been carried on by other employees.

The dye-room contained four vats, each six feet long by five wide and two feet seven inches in height above a planking that circled the vat at the floor. The planks were eight to ten inches wide, lying flatly on the floor and beveled off from the vat. There was an open frame fitted with slats in the vat and a hoisting gear connected with it by which the frame loaded with wool was lowered into and raised out of the hot dye.

To raise the frame up from the vat two men, plaintiff and another, were required to connect certain hooks and rings together in the gearing above the vat, and while they were leaning over the vat, on opposite sides of it, in an attempt to effect the coupling the plaintiff fell into the vat and was badly scalded.

His own evidence was that the floor was wet about the vat, and was usually so, and that he slipped and went into the vat; and neither from him or from any witness is there any other evidence as to how the accident happened. *Held;*

on these facts that the plaintiff cannot recover, either upon the ground that the defendant did not furnish safe and sufficient machinery, or that the plaintiff was not sufficiently instructed in the hazards of the employment. The presumption is that the plaintiff was guilty of some carelessness that caused the injury.

ON REPORT.

This was an action on the case to recover damages received by the plaintiff, a boy of seventeen years, while working in the dye-room of a woolen mill of the defendant in South Berwick. The plaintiff claimed that the defendant was negligent in two particulars: first, in the construction of its vat; and, second, in failing to notify the plaintiff of the dangers of such construction, the plaintiff being of such immature age that he did not appreciate the danger of the work he was set to perform.

The facts are stated in the opinion.

*C. Dean Varney, Edward F. Gowell* and *Geo. F. Haley,* for plaintiff.

In *Buzzell* v. *Laconia Manfg. Co.,* 48 Maine, 113, 116, the court say: "It is the duty of every employer to use all reasonable precautions for the safety of those in his service. He should provide them with suitable machinery, and see that it is kept in a condition which shall not endanger the safety of the employed. If the employer knowingly makes use of defective and unsafe machinery, when an injury is done to a servant ignorant of its condition, and in the exercise of ordinary care, he should compensate the person thus injured through his neglect. The capital of the master furnishes the means of his employment. His will determines the place. His sagacity directs, controls and supervises not merely the labor, but the machinery and other instruments and appliances by which the labor is performed. The superior intelligence and determining will of the master demand vigilance on his part, that his servants shall neither wantonly or negligently be exposed to needless and unnecessary peril."

To require a workman while leaning some three feet over a vat filled with scalding hot liquid dye with both hands occupied with doing his work with nothing to keep him from falling in but his

foothold, to oblige him to rely for his foothold on a plank which need not have been there at all, is a flagrant case of "wantonly and negligently exposing a servant to needless and unnecessary peril."

Ordinary care in every situation is proportionate to the injury that may arise to others. *Morgan* v. *Cox*, 22 Mo. 373 ; *Toledo R. R. Co.* v. *Goddard*, 25 Ind. 185. Wood on Master & Servant (1st ed.) p. 730, § 359, says : " The term 'ordinary care' is a flexible one and has no fixed meaning. What might be considered to be 'ordinary care' in reference to one matter, might as applied to another be gross negligence, therefore the measure of the term 'ordinary care' and of the master's duty is to be estimated from the nature of the implement, the use to which it is devoted and the consequences to the servant in case it should prove defective." Certainly the consequences to the servant in the case of this defect would seem to be serious enough to bring it within the rule laid down by Mr. Wood on the part of the master.

The master having decided to use dangerous machinery was negligent in not informing plaintiff of the dangers.

" The employer may undoubtedly exercise his own judgment as to the kind of machinery he shall use, as well as to the condition in which it shall be kept, having due regard to the rights of others he may do that which in his own view his interest may dictate or he may be careless of that interest. But if he elects to use machinery unsuitable, or permits it intentionally or carelessly to get out of repair so that in its use the employee incurs more danger other than fairly and naturally belongs or is incidental to the business or employment, another and somewhat different duty devolves upon him. The master is required to give such information to the servant as will enable him to enter into his contract intelligently and with a full understanding of the unusual dangers he has to encounter.

" To relieve the master from liability upon this ground, it must appear not only that the servant had knowledge of the insufficiency of the machinery, but that his age and experience or the instructions given by his master, or some one in his behalf, were such as to

enable him to fully understand and appreciate the dangers attending his employment. That he assumed the ordinary risks, the law will infer from the contract of service. If the master would impose upon him the extraordinary risks, the burden is upon the master to show, as matter of fact, that such was the contract." *Shanny* v. *Androscoggin Mills*, 66 Maine, 420, 427, 428.

The burden then rests upon the defendant to show either that the plaintiff's age, or the instructions given him, were such as to fully enable him to understand and appreciate the dangers attending the employment. 14 Am. & Eng. Ency. of Law, p. 844.

*George C. Yeaton and John Kivel*, for defendant.

Counsel cited: 2 Bailey on Mas. Lia. Inj. to Serv. c. 14, par. 2664; *Ciriack* v. *Merchants' Woolen Co.*, 146 Mass. 182; *S. C.*, 151 Mass. 152; *Probert* v. *Phipps*, 149 Mass. 258; *Coullard* v. *Tecumseh Mills*, 151 Mass. 85; *Pratt* v. *Prouty*, 153 Mass. 333; *Rooney* v. *Sewall & Day Cordage Co.*, 161 Mass. 153, 160; *Ladd* v. *New Bedford R. R. Co.*, 119 Mass. 412; *Fifield* v. *Northern R. R.*, 42 N. H. 239, 240; *Foss* v. *Baker*, 62 N. H. 251; *Hanley* v. *Railway Co.*, 62 N. H. 282; *Williamson* v. *Sheldon Marble Works*, 66 Vt. 427; *Wormell* v. *M. C. R. R. Co.*, 79 Maine, 397; *Campbell* v. *Eveleth*, 83 Maine, 50; 14 Am. & Eng. Ency. Law, par. 842, and cases; *Casey* v. *C. St. Paul, Minn. & O. Ry. Co.*, 90 Wisc. 113, 117; *Hayden* v. *Smithville Manfy. Co.*, 29 Conn. 548; *Sullivan* v. *Ind. Manfg. Co.*, 113 Mass. 396; *Gilbert* v. *Guild*, 144 Mass. 605; *Hatt* v. *Nay*, 144 Mass. 187; *Murphy* v. *Am. Rubber Co.*, 159 Mass. 267; *Carey* v. *B. & M. R. R.* 158 Mass. 228; *Kleinest* v. *Kunhardt*, 160 Mass. 231; *Disano* v. *N. E. Steam Brick Co.*, 40 Atl. 7; *McIntire* v. *White*, 171 Mass. 171; *Yeaton* v. *B. & L. R. R. Corp.* 135 Mass. 418; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572, 583; *Truntle* v. *North Star Woolen Mill*, 57 Minn. 52; *Hickey* v. *Taaffe*, 105 N. Y. 26; *Buckley* v. *G. P. & R. M. Co.*, 113 N. Y. 544; *Murphy* v. *Deane*, 101 Mass. 455; *Dowd* v. *Chicopee*, 116 Mass. 93; *Dyer* v. *Fitchburg R. R.* 170 Mass. 148; *Walsh* v. *B. & M. R. R.* 171 Mass. 52; *Mayo* v. *B. & M. R. R.* 104 Mass. 137; *Crafts* v. *Boston*, 109 Mass. 519; *Hinckley* v. *Cape Cod R. R. Co.*, 120 Mass. 257, 262; *Gerety* v.

*Phila., etc., R. R.,* 81 Pa. St. 274, 277; *Gaynor* v. *R. R. Co.,* 100 Mass. 208; *Gahagan* v. *R. R. Co.,* 1 Allen, 190; *Gavett* v. *R. R. Co.,* 16 Gray, 506; *Barton* v. *Kirk,* 157 Mass. 303; *Moore* v. *B. & A. R. R. Co.,* 159 Mass. 399; *Lesan* v. *M. C. R. R.,* 77 Maine, 85; *Merrill* v. *No. Yarmouth,* 78 Maine, 200; *Pitts. Conn. & St. L. Ry. Co.* v. *Adams,* 105 Ind. 151, 166; *Klochinski* v. *Shaw Lumber Co.,* 93 Wisc. 417; *McLane* v. *Perkins,* 92 Maine, 39; *Cunningham* v. *Iron Works,* 92 Maine, 501, 512; *Jones* v. *Mnfg. Co.,* 92 Maine, 565.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

PETERS, C. J. The essential facts in this case are not really in dispute, but only the inferences to be fairly deduced therefrom. To the court, by agreement of the parties, is left the decision of the case upon both the law and the fact.

The plaintiff at the time his injury was received was seventeen years and two months old, and, as far as appears, possessed of such degree of intelligence as ordinarily belongs to one of his years. He had been in the employment of the defendant company in their mill off and on in different ways for about two years, attending "breakers and hoppers" in the card-room, then becoming a spinner in the mill, and lastly working in the dye-house where he had been employed at work jointly with another hand about four weeks before the accident happened; thus becoming a good deal familiarized, no doubt, with different phases of employment in the mill. Before his being personally employed in the dye-house, he had been in and out of the room where the dyeing was carried on, noticing the men at their work, and assisting them occasionally to some extent.

The dye-house contained four kettles or vats, each six feet long and five wide, and two feet and seven inches in height above a planking which circled each vat at the floor. The plank, eight or ten inches wide, were laid flatly on the floor and were "beveled off" from the vat. Each vat, having clamps upon it, required the hole in the floor where it was to be set to be a little larger than the

vat would be without such attachments, leaving an open space around the vat, and the plank were used to stop up the opening.

There was an open frame, a structure fitted with slats, designed to be sunk into the vat, upon which wool and blankets were loaded, sometimes the one and sometimes the other, and then lowered into the vat to be dyed. The frame was fitted with a hoisting gear so that it could be swung over and then lowered into the vat containing boiling hot dye, and raised up out of the vat when the process of dyeing became completed.

In order to raise the frame out of the vat the two men in attendance had to do some coupling of hooks with rings connected with the gearing, which necessitated their leaning over the sides of the vat, while facing each other, to a point near the centre of the vat; and the plaintiff while performing his part of such an act, somehow fell into the vat, and before he could be rescued by his co-worker and another person at work in the same room, was severely scalded and injured thereby.

The plaintiff alleges that he was injured through the fault of the defendant, either in not furnishing reasonably safe and proper machinery and appliances, or by its failure to instruct him in the art of using the machinery and explaining the dangers incident to its use.

Experience shows us that there is an instinctive proneness in a person who has received an injury to seek for some culpable cause for it other than his own remissness. He can see carelessness in others but is likely to be blind as to his own. Is not that a fair characterization of the contentions in the present case? The plaintiff's counsel asserts that the floors about the vats were wet, exposing them to some slipperiness. Did not the plaintiff see that himself? Of course he did as it was a normal and necessary state of things there. But he is reluctant to admit that he did.

Counsel for plaintiff contends that the planking about the vat was an improper appliance, rendering the structure defective and dangerous. Is it not true that, had there been no planking about the vat its absence could have been just as reasonably criticised as its existence now is? Really, the planking must be an assistance to safety

if used cautiously, and as any person's wits would naturally lead him to use it.  But, to avoid any imputation of his own fault on this ground the plaintiff endeavors to deny, although he really fails to deny, that he ever noticed that the planks were there, and that leads him to the necessity, to preserve consistency, of saying that he does not know whether he put either foot on the planking or not on the day of the injury or whether he ever did so or not.  He says, "I know now there was a plank because I have heard so many people talk about it."  But he feels compelled to say, "I might have noticed it, sweeping around it, sweeping the wool."  It appears that he habitually swept the floor three or four times a day, clearing up the waste wool collected around all the four vats.  On cross-examination he tries to deny knowledge of the planking but really confesses knowledge.  We can have no doubt that he many times noticed the planks and their shape and situation.

But it is urged that he was not instructed in the use of the machinery or informed of its dangers while being used.  That should have been as obvious to him on the day of the accident as to the defendant or its employees.  There was an overseer and several other employees habitually in the same room with him.  If the plaintiff was in any respect uninformed of his duties on the day he began his work, but such does not seem to have been the case, he must have become fully acquainted with them by his constant service in the work for four weeks afterwards; especially as he had been working all of that time in cooperation and face to face with another employee of greatly larger experience in the same employment, whose example and aid were of themselves a sufficient and the most satisfactory instruction to the new-comer.  Their labors were indissoluble, not separate.

The counsel for the plaintiff asserts, arguendo, that the plaintiff was standing on the plank, not making it clear whether he means with two feet on the plank or only one, leaning over the vat when his foot slipped off the plank and from under him and he toppled over into the boiling dye.  But the plaintiff himself gives no such account of the accident, but merely says he slipped and went into the vat, without stating any further circumstance about the accident,

saying repeatedly that he has no knowledge that he ever stepped on the plank at all in any manner. He says he never thought anything about the danger, that he did not remember how he did stand while pushing over the hook to his co-operator, but that his habit was to "walk up to it (the hook) and push it the best way he could and get back." We feel forced above all else to the conclusion that, whether the defendant was or not in any fault, actual or theoretical merely, the case fails to show that the plaintiff's own heedlessness was not the great cause of the accident. There must therefore be an entry of,

*Judgment for defendant.*