H. T. MITCHELL ET UX. v. COMANCHE COTTON OIL COMPANY.

Decided June 27, 1908.

**1.—Master and Servant—Machinery—Obvious Danger.**

No duty rests upon a master to warn even a minor of the ordinary risks and dangers of his occupation which the latter actually knows and appreciates, or which are so open and apparent that one of his age and capacity would, under like circumstances by the exercise of ordinary care, know and appreciate.

**2.—Same—Minors—Duty to Warn.**

The duty of instructing minors as to the dangers of their employment being predicated upon the fact that without such warning they would be exposed to avoidable dangers of which they are presumably ignorant, it follows that after they have been properly instructed their minority will usually cease to be a material factor in determining the extent of the master's liability. In such cases the defenses of assumed risk and contributory negligence will be as available against them as against adults.

**3.—Same—Case Stated.**

In an action by the parents against an oil mill company for damages for the death of their minor son whose clothing was caught in a revolving shaft near his place of duty, evidence considered, and held to justify the trial court in giving a peremptory instruction for the defendant.

**4.—Same—Warning—Assumption of Risk.**

That the master's machinery might have been arranged in a less dangerous manner is immaterial when the servant has been sufficiently instructed.

Appeal from the District Court of Comanche County. Tried below before Hon. N. R. Lindsey.

*J. B. Keith* and *G. E. Smith*, for appellants.—The master is in duty bound to furnish the servant with a reasonably safe place in which to work, having regard for the services required, the age and discretion of the servant, and if the master fails in this duty, and the servant is injured thereby, the master is liable, and proof of such liability may be sufficiently shown by the circumstances of the injury. Gulf, C. & S. F. Ry. v. Wood, 63 S. W., 165; McCray v. Galveston, H. & S. A. Ry. Co., 34 S. W., 96, 97; Missouri, K. & T. Ry. Co. v. Crowder, 55 S. W., 380; Wells, Fargo Express Co, v, Page, 68 S. W., 528.

The master is under legal obligation to adequately warn the servant of the danger of his employment where there are dangers, when the servant, on account of his youth, inexperience and indiscretion, does not apprehend the danger, and this the master is bound to do, even though the danger be open, and a failure to so warn, if same be the proximate cause of the injury, is negligence, for which the master is liable, and in this case the court erred in withdrawing this issue from the jury. Texas & Pac. Ry. Co. v. Brick, 83 Texas, 598, on what is adequate warning and instructions; Greenville Cotton Oil Company v. Harkey, 48 S. W., 1005.

Where the facts show *prima facie* that the negligence of the master was the cause of the injury to the servant, who, on account of his youth and indiscretion, did not appreciate the danger, and that the danger was open to observation, the question as to whether deceased assumed the risk or whether the injury was caused by his own negligence should be submitted to the jury.

*Baker & Thomas* and *G. H. Goodson,* for appellee.

PRESLER, ASSOCIATE JUSTICE.—This was a suit by appellants, as the father and mother of Wylie Mitchell, for damages on account of the death of said Wylie, which is alleged by them to have been brought about by reason of the negligence of appellee while their said son was in its employ.

It was alleged that plaintiffs' son was nineteen years of age, and was killed while in the discharge of his duties to defendant, said duty being alleged to have consisted in operating a sewing machine which was used in connection with the machinery of defendant for pressing cotton seed.

The acts of negligence which were claimed as the proximate cause of the death were: (a) In appellee failing to provide deceased with a reasonably safe place to work, in that he was required to perform his duties in close proximity to a rapidly revolving line shaft, strung with belts and pulleys which were unguarded; (b) in appellee failing to warn and in not giving deceased adequate warning of the dangers of his employment; (c) in appellee's failure to guard said line shaft and pulleys; (d) in appellee's arrangement of the machinery at which deceased was required to work, which was claimed to have been negligently arranged.

Appellee answered by general exception, general denial and defense of assumed risk and contributory negligence.

A trial before the jury resulted in the court, on motion of appellee, giving the jury a peremptory instruction to find for the appellee company and in the court declining to give certain charges requested by appellants. The verdict and judgment was for the company, and the appellants duly excepted to this action, order and ruling of the court and judgment, and give notice of appeal to this court, and here now present their appeal upon the following assignments of error.

Appellants' first assignment of error complains of the court's action in giving the peremptory instruction to the jury to return a verdict for the defendant, and is, in our opinion, decisive of the case. It appears from the evidence that the son of appellants, a young man nineteen years of age, had been employed for some two and one-half or three months by the appellee during the season preceding his death; that

during the time referred to he had worked for the greater part of the time in the same place and at the machine where his death occurred, and was necessarily familiar with the danger incident to the place and character of his employment; that is, the danger of coming in contact with the line shaft that was being operated two and one-half or three feet in his rear, and the pulleys thereon and the belt running from said line shaft to the sewing machine which he was operating, it appearing that he was a young man of at least average intelligence and capacity to understand and appreciate danger that was open and patent, and that a person of ordinary intelligence, and no experience, even would take cognizance of. It further appears that when he commenced working for appellee several months preceding his death, appellee's manager, one Coleman, warned him of the danger incident to his employment, and instructed him to be very careful about the machinery, and to be sure and not come in contact with the shaft or pulleys, or anything of the kind that he might get hurt in. This witness testified: "I am foreman of the Comanche Cotton Oil Mill Co. I have been foreman since it started, in December, 1904. . . . My duties are to look after the men that are employed in the mill and keep up the mechanical end of the business, and look after it in general . . . I remember the plaintiff's son, Wylie Mitchell. He worked at the mill some. Wylie is dead. He died the first of October—this October a year ago. I was not present right at the time of his injury, but was there immediately afterwards. I was in the engine room when they told me that he was hurt. . . . Mr. Mitchell was sitting up a little west of where the sewing machine sat—between the machine and shaft about middle ways, I suppose. His face was towards the west, and he was sitting flat on the ground. . . . He was holding the stub of his left arm in his right hand when I got to him. . . . His clothing were wrapped around the pulley on the shaft that runs the sewing machine. The line shaft was in motion. I think the shaft is in the neighborhood of forty feet long. Its diameter is 2 7-16 inches. The diameter of the pulley is between five and six inches. There are other pulleys on the shaft, but just one near this machine. The others are several feet away. There is one east of where the machine was and several west of it. The shaft and pulleys were not protected in any way by guards. That could not be done practically. It could not be done for the simple reason that we have to have access to those shafts and pulleys for the purpose of throwing off and putting on belts. If there was a shield at all it would have to be perfectly tight or it would wind up, and it would not be practical to fix it that way. In all modern machinery the shaft is put up about a man's waist in the basement. They are not put up about the ceiling in modern mills. The main line shaft is overhead, and this shaft is just a countershaft that drives the linters. It is not the main shaft at all. We had the machine arranged the best we could. . . . A man has to come in contact with the pulley in throwing the belt, I don't care how large the room is nor how far off the machine is from the shaft. In throwing the belt we always used a stick or screw-driver. We never put our hands on the belt. I think I employed this young man, if I remember correctly. I gave him instructions the year before, but do not remember that I did last year. He worked for the mill about a half sea-

son—two and a half or three months—in the season of 1905. We run that season about five and a half or six months. Yes, I instructed him the first year. I instructed him to be very careful about the machinery, and to be sure and not come in contact with any of the shafts or pulleys, or anything of the kind that he might get hurt in. . . . The belt running from the shaft to the machine was a cross belt. When the machine was not in operation we could leave the belt on or throw it off. We sometimes took it off and hung it up. I don't remember that I instructed Wylie about the machine at that time. I think I have instructed him to take it off and hang it up when the machine was not running. It was our custom to leave it on, but it didn't make any particular difference. That was the first day we operated the machine that year—the first day the mill was run that season. I did not furnish the young man with a stick that day, but we kept the screw-driver there in the drawer all the time. I think the screw-driver is about fourteen inches long. The handle is about four inches long. . . . I think it was there in the drawer when the young man got hurt. Yes, it was there to keep the screws in shape, but numbers of times the young man has seen me throw the belt with the screw-driver. When I was teaching him all about it I would use the screw-driver in throwing the belt all the time. The screw-driver is round up to pretty close to the end, and then it is flat, so it will go in the heads of the screws. The stick that we used was from ten to fourteen inches long; it was just a small belt, and most anything would throw it. . . . Wylie Mitchell began working for the oil mill in 1905. He worked right close to three months at this particular work. The machine is constructed just like an ordinary sewing machine, only it is on a larger scale. It is a Singer machine . . . The machine is perfectly naked and visible to the eye—nothing to obstruct it from the view. It is located on a table . . . The shaft runs through the arm and the pulley is on the end of the shaft . . . The belt connects with the line shaft. The shaft extends clear across the room. It is about four and a half feet from the floor. . . . This accident occurred about twelve o'clock in the daytime. It was a bright, sunshiny day—the day this thing happened. There are four windows in that room, one right in front of the machine. The basement is not over two feet in the ground. The windows in the basement are solid, and are over three feet wide. There are four windows and one door. I have tested it, and I can read fine print there in the basement on a day like this. Can read it at the place the machine was being operated. . . . There is a globe to an electric light right above the machine. The mill generates the electricity that they use. It can be turned on at all times when the mill is running. My opinion, based on my experience with mills, is that we have one of the safest plants that can be built. We did not regard the machine, and the manner in which it was run with the shaft and belt, as being any danger whatever. We did not regard the operation of it as a dangerous work at all. It is the simplest piece of machinery about the mill, and we regard it as being one of the safest places to work about the oil mill. . . . Of course, there is danger in getting in a shaft wherever it may be, and a man with loose clothing on may get caught on a pulley or set-screw on a shaft. Of course, it would be dangerous if a man should get into one of them."

No eye-witness testified to the accident that resulted in the death of deceased. Neither did the deceased make any statement as to the manner in which the injury occurred. The evidence of plaintiffs' other two witnesses, D. J. Barker and J. M. Slayton, did not differ in any material respect and upon any material issue from that of the witness Coleman. These three witnesses are all who testified in the case with reference to the location of the machinery, the manner of operating it and the occurrence of the injury.

While not material to the conclusion reached by us, it may be doubted under many authorities whether it. was necessary and incumbent upon the master in this case to give notice or warning of danger at all, the danger to which deceased was exposed was so open and manifest to a person of his intelligence and to a person of ordinary observation, and could only arise by his carelessly and unnecessarily coming in contact with the machinery, line shaft and pulleys, the operation of which was open to the observation of anyone; but if it be conceded that such warning was necessary, we are of the opinion that he was sufficiently warned and instructed by appellee's manager a few months before, upon first being employed by him, and it does not appear that it was incumbent upon the manager to repeat the warning originally given, as the continued employment and experience in the position and about the machinery made the danger of coming in contact with the machinery better known to him, and obviated the necessity of further and repeated warnings.

The authorities, both in this and other States, are uniformly to the effect that no duty rests upon the master to notify even a minor of the ordinary risks and dangers of his occupation, which the latter actually knows and appreciates, or which are so open and apparent that one of his age and capacity would, under like circumstances, by the exercise of ordinary care, know and appreciate, as stated in the case of Truntle v. North Star Woolen Mills Co., 57 Minn., 52; 58 N. W., 832. In Ciriack v. Merchants' Woolen Co., 146 Mass., 182, recovery was denied for an injury received by a boy of twelve whose person came into contact with exposed gearing. The position taken was that, in the absence of anything to show the contrary, the boy must be assumed to have the intelligence and understanding usual with boys of that age, and that this assumption involved the further one that he was well aware of the danger which caused the injury, and that no instruction could have been given him which would have afforded larger measure of knowledge than that with which he was chargeable. In Buckley v. Gutta Percha & Rubber Mfg. Co., 113 N. Y., 540, it was held that a child of twelve who, after helping operate a machine for only three days, slipped while attempting to put a cylinder in place, and in throwing out his hand to save himself, brought it into contact with a cogwheel, could not recover on the ground that he had received no instruction as to the danger. In White v. Wittemann Lithographic Co., 131 N. Y., 631, it was assumed that a boy of thirteen understood the danger of getting his hand caught in cogs, and as stated by Labatt, in his work on Master and Servant, the duty of instructing minors, being predicated upon the fact that without such instruction they would be exposed to avoidable dangers of which they are presumably ignorant, it follows that, after they have

been properly instructed, their minority will usually cease to be a material factor in estimating the extent of the employers' liability. In other words, the defense of assumption of risk and contributory negligence will then be available against them if, under the same circumstances, these defenses would have been available against adults. That the business might have been carried on in a less dangerous manner is a circumstance quite immaterial where the servant has been sufficiently instructed. See 1 Labatt on Master and Servant, art. 251.

We are, therefore, of the opinion that the court did not err in giving the jury peremptory instruction in this case to return a verdict for the defendant, and that this case should be, and the same is, hereby in all things affirmed.

*Affirmed.*

Writ of error refused.