LYSLE L. WIGGINS *v.* THE E. Z. WAIST COMPANY.

Special Term at Rutland, November, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and POWERS, JJ.

Opinion filed May 7, 1910.

*Master and Servant—Injuries to Servant—Young and Inexperienced Servant—Master's Duty to Instruct and Caution— Scope and Limitation—Attending a Mangle—Assumed Risk.*

Even a young, inexperienced, and uninstructed servant, by continuing in the service of attending a machine, may, as matter of law, assume the risk of injury due to an inadequate guard device.

The sole purpose of the requirement that a master employing an immature and inexperienced servant in a dangerous service shall explain to him the perils incident to his work and instruct him how to avoid them, is to give adequate information and instruction as to unknown and unappreciated dangers; where, therefore, such servant already knows and comprehends all the hazards of his employment, or, in the circumstances, ought to know and comprehend them, no caution or instruction is required.

In an action by an inexperienced servant sixteen years of age for injury to his hand by having it drawn into a mangle that he was attending, caused by the master's alleged failure to give proper instruction and caution, the burden was on plaintiff to show, besides his youth and inexperience, that, in the circumstances, he was in need of instruction and warning.

The doctrine of assumption of risk involves more than a full acquaintance by the servant with all his surrounding physical conditions, it implies a sufficiently exact appreciation by him of the nature and extent of the danger to enable him to estimate the possibility of his surroundings so far as they affect his safety, and, in the case of a youthful servant, it further involves mental and physical capacity sufficient so to regulate his conduct as to secure his safety as effectually as the circumstances admit, for while a comprehension of the risks is usually inferable from a knowledge of the conditions, in the case of infant employees it is not always so.

Actual knowledge and comprehension of the danger is not essential to the assumption of risk by a servant, for he will be taken to know and comprehend all that a prudent and intelligent person, with the same means and opportunities of acquiring knowledge of the material facts; and the same capacity for estimating their significance, would know and comprehend, and, if he is a minor, it will be presumed, where there is no evidence to the contrary, that he has the intelligence and understanding that persons of his age usually have.

In an action by an inexperienced and uninstructed servant sixteen years of age, for injury to his hand by having it drawn into a mangle that he was attending, evidence examined, and *held* that the danger was so obvious that, as matter of law, he is chargeable with knowledge and comprehension thereof, and so that he assumed the risk and cannot recover.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1907, Bennington County, *Haselton,* J., presiding. At the close of all the evidence defendant moved for a directed verdict on the grounds that, on all the evidence, defendant was guilty of no negligence; that plaintiff assumed the risk of the danger that caused his injury; and that he was guilty of contributory negligence. Motion denied, to which defendant excepted. Verdict and judgment for plaintiff. Defendant excepted. The opinion states the case.

*O. M. Barber* and *R. E. Healey* for the defendant.

The danger that caused plaintiff's injury was so obvious that, as matter of law, he must be held to have assumed the risk thereof. In the absence of proof to the contrary it must be assumed that plaintiff had the intelligence, understanding, and capacity which boys of his age usually have; whenever a plaintiff claims otherwise, the burden is on him to prove it. *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427; *Buch* v. *Co.,* 69 N. H. 257; *Ciriack* v. *Merchants Woolen Co.,* 146 Mass. 182; *Coullard* v. *Tecumseh Mills,* 151 Mass. 83; *Nagle* v. *Allegheny Valley R. R. Co.,* 88 Penn. St. 35; *Connolly* v. *Eldredge,* 160 Mass. 566; *Gaudet* v. *Stansfield,* 182 Mass. 451; *Burke* v. *Davis,* 191 Mass. 20; *Day* v. *Achron,* 23 R. I. 627, 50 Atl. 654; *Morancy* v. *Hen-*

*nessey*, 24 R. I. 205, 52 Atl. 1021; *Hickey* v. *Taafe*, 105 N. Y. 26; *Harris* v. *Bottum & Torrance*, 81 Vt. 346; *Hanson* v. *Hammell*, 107 Iowa 171; *Greet Bros.* v. *Brown*, 7 Kan. App. 394; *Jones* v. *Roberts*, 57 Ill. App. 56; *Hogle* v. *Excelsior Co.*, 95 Ga. 34; *Wilson* v. *Steel etc. Co.*, 163 Mass. 315; *Pratt* v. *Prouty*, 153 Mass. 333; *Tinkham* v. *Sawyer*, 153 Mass. 485; *Leitvitz* v. *American Zylonite Co.*, 154 Mass. 382; *Downey* v. *Sawyer*, 157 Mass. 258; *Gilbert* v. *Guild*, 144 Mass. 601; *McGuerty* v. *Hale*, 161 Mass. 51; *Ogley* v. *Miles*, 139 N. Y. 458; *White* v. *Willeman Litho. Co.*, 131 N. Y. 631; *Dickinson* v. *Vernon*, 77 Conn. 537; *Mundhenke* v. *Oregon City Mfg. Co.*, 1 L. R. A. (N. S.) 278; *Cowett* v. *Amer. Woolen Co.*, 97 Me. 543; *Toledo etc. Co.* v. *Trimble*, 8 Ind. App. 333; *Mackin* v. *Alaska Refrigerator Co.*, 100 Mich. 276; *O'Hare* v. *Keeler*, 48 N. Y. Supp. 376; *Walsh* v. *Commercial Steam Laundry Co.*, 11 Miss. 3, S. C. 31 N. Y. Supp. 833; *Groth* v. *Thomann*, 110 Wis. 488; *Gordon* v. *Reynolds Card Mfg. Co.*, 47 Hun. 278; *Roth* v. *Bassett Mfg. Co.*, 96 Wis. 615.

Defendant cannot be held liable on the sole ground that the machine was not properly guarded. *Rock* v. *Indian Orchard Mills*, 142 Mass. 522; *Tinkham* v. *Sawyer*, 153 Mass. 485; *McCafferty* v. *Lewandos Dyeing etc. Co.*, 194 Mass. 412; *Buckley* v. *Gutta Percha etc. Co.*, 113 N. Y. 540; *O'Connor* v. *Whittal*, 169 Mass. 563. And the master's obligation to instruct a minor is not absolute, but is only required in respect of those dangers that are not so obvious that a person of his age and intelligence cannot plainly see and comprehend them. 2 Thomp. Neg. 977; *Omaha Bottling Co.* v. *Thelier*, 59 Neb. 257; *Hesse* v. *Natl. Casket Co.*, 66 N. J. L. 652; *DeGraff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *Bender* v. *N. Y. Glucose Co.*, 72 N. J. L. 218; *Langlois* v. *Dunn Worsted Mills*, 25 R. I. 645; *Nugent* v. *Kauffman Mill Co.*, 131 Mo. 241; *Trundle* v. *North Star Woolen Mill Co.*, 57 Minn. 52; *Bohn Mfg. Co.* v. *Erickson*, 55 Fed. 945; *Cudahy Packing Co.* v. *Marcaw*, 106 Red. 645; *Bessey* v. *Newichawanick Co.*, 94 Me. 61; *Rood* v. *Lawrence Mfg. Co.*, 155 Mass. 590; *Crow* v. *Orr*, 140 N. Y. 450; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Sullivan* v. *Simplex Elec. Co.*, 178 Mass. 35; *Shine* v. *Cocheco Mfg. Co.*, 173 Mass. 558; *Stuart* v. *West End St. Ry.*, 163 Mass. 391; *Lowcock* v. *Franklin Paper Co.*, 169 Mass. 313; *Patnode* v. *Warren Cotton Mills*, 157 Mass. 283; *Silvia* v. *Sagamore Mfg. Co.*, 177 Mass. 476; *DeSouza* v. *Staford Mills*, 155

Mass. 476; *Lennon* v. *Goodrich,* 192 Mass. 293; *Carrington* v. *Mueller,* 65 N. J. L. 244; *Fownes* v. *Phillips,* 39 Ark. 17; *Cunningham* v. *Bath Iron Works,* 92 Me. 501; *Atlas Engine Works* v. *Randall,* 100 Ind. 293; *Berger* v. *St. Paul M. & M. R. Co.,* 39 Minn. 78.

*T. W. Moloney* and *F. C. Archibald* for the plaintiff.

POWERS, J.   The plaintiff, a youth nearly sixteen years of age, was injured while employed by the defendant and operating a power driven ironing machine usually called a mangle. Briefly described, the working parts of this machine consisted of a steam-heated, iron cylinder, about five feet long and two feet in diameter, which revolved slowly toward the operator.   Just in front of this cylinder and somewhat above its center, was an iron roll about four inches in diameter and of the same length as the cylinder, which revolved slowly from the operator.   The surface of this roll was not in contact with that of the cylinder, but close to it.   Another similar roll was placed in a corresponding position behind the cylinder.   This, too, turned slowly from the operator.   A tightly-stretched, endless, canvas belt, of a width equal to the length of the cylinder, passed over the front roll, down under the cylinder, up the back side of it, over the back roll, and thence down under the machine to the front and up over the front roll again.

In front of this roll, and slightly lower than its top, was a wooden feed table about seventeen inches in width.   Passing along over the space between the front roll and the cylinder, was a heavy iron rod or pipe, which some of the witnesses called a "guard," and some a "guard protector."   Its real purpose and its exact location were in dispute, but it was so placed as not to prevent the plaintiff's hand from passing under it and into the machine as hereinafter stated.   The operator stood in front of the table and fed the garments into the machine by placing them on the traveling canvas or into the angle formed by the canvas and the surface of the cylinder,—where they would be gripped between the canvas and the cylinder, and, by action of the machine, be pressed against and carried around the hot cylinder. A back-tender stood behind the machine, received the garment as it came up over the back roll, turned it over, and placed it

upon the top of the cylinder. Whereupon, by action of the machine, it was again carried around under the cylinder and its ironing completed.

The plaintiff had had no previous experience in operating machinery. He began work for the defendant on Monday as a back-tender on this machine. He continued at that work until Wednesday afternoon, when without warning or instructions, he was set to feeding the machine. About half an hour later, his fingers were caught between the canvas and cylinder, drawn into the machine and severely injured.

We may assume, for the record warrants it, that the iron pipe referred to was as a device for preventing the hands of the operator of the machine being caught between the canvas and cylinder and drawn into the machine, inadequate; but this is not determinative of the question of liability. The plaintiff continued in the service, so the question of assumption of risk must be examined. The plaintiff's position is that on account of his youth and inexperience, he was legally entitled to warning and instruction, which were not given him, and therefore he cannot be held to have assumed the risk.

It is said in *Hayes* v. *Colchester Mills,* 69 Vt. 1, 37 Atl. 269, 60 Am. St. Rep. 915, in recognition of well established principles, that it is the duty of one who employs an immature and inexperienced person for a dangerous service to explain to him the perils incident to his work, and instruct him how to avoid them.

Various reasons have been assigned by the courts as the basis of this rule. The one which seems most satisfactory, to the writer at least, is that which regards it as a special application of the general rule that the degree of care which one who owes another a duty is bound to exercise varies with the circumstances and must be commensurate with the dangers to be guarded against. One whose intelligence or experience falls under the average is more likely to be injured in a given occupation than one not so deficient. A minor usually fails to come up to the standard in these respects,—a fact of which the master is bound to take notice. Special caution is therefore required of the master in such case. Logically, the special caution which the law requires is that the inadequate information and understanding of the immature servant be supplemented with sufficient information to place him, as regards the work in hand, on a

parity with a servant of mature years. But it matters little what the true rationale of the rule is; it is firmly established and everywhere recognized. It does not, however, apply to every minor servant who receives an injury. The sole purpose of the rule is to give information of unknown or unappreciated dangers. When, therefore, the minor knows and appreciates all the hazards of his employment, the law does not require of the master so idle a thing as his warning and instruction. Minority, alone, is not enough to put this requirement on to the master. The burden of proof, then, was on the plaintiff, though he was under age and inexperienced, to show that he was in need of a warning of the perils involved in the operation of the mangle and of instruction as to avoiding them. *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427, 29 Atl. 669.

That he was fully acquainted with all the physical conditions surrounding him is too plain to admit of denial. But it does not necessarily follow that he appreciated the hazards which these conditions involved. The doctrine of assumption of risk involves a sufficiently exact appreciation of the nature and extent of the danger to enable the servant to estimate the possibilities of his surroundings so far as they affect his safety. Labatt, Mast. & Serv., §279a. In the case of youthful servants it involves more—a sufficient mental and physical capacity so to regulate his conduct as to secure his safety as effectually as the circumstances admit. *Bolton* v. *Ovitt,* 80 Vt. 362, 67 Atl. 881. So while a comprehension of the risks is usually inferable from a knowledge of the conditions, in the case of infant employees it is not always so. As was said by this Court in *Williamson* v. *Sheldon Marble Co., supra,* a person of mature years and experience might fully comprehend the perils of his position, while a youth, from lack of years, experience or capacity, might wholly fail to comprehend them.

In the case in hand, the plaintiff testified that he did not know that the canvas and cylinder would draw his hand in. We need not inquire what effect is to be given to this statement, for actual knowledge was not necessary to an assumption of the risk. The general rule is that a servant is presumed to see and understand all that a prudent and intelligent person, with the same means and opportunities for acquiring a knowledge of the material facts and the same capacity for estimating their sig-

nificance, would see and understand. The true test is, not whether he actually knows and comprehends, but whether, in the circumstances, he ought to know and comprehend the dangers which beset him. And this rule, as is plain from a careful reading of our own cases above cited, applies to a minor servant to the same extent as to an adult when the dangers are so apparent that one of his age, experience and capacity would, in the circumstances and by the exercise of due care, know and appreciate them and how to avoid them. *Cudahy Packing Co.* v. *Marcau*, 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258; *Strattner* v. *Wilmington City Electric Co.*, (Del.) 50 Atl. 57; *Cunningham* v. *Bath Iron Works*, (Me.) 43 Atl. 106; note to *Noden* v. *Verlenden Bros.*, 3 Am. & Eng. Ann. Cas. at p. 375.

In applying this test to the plaintiff, (there being no evidence to the contrary) we must assume, as did the court below, that he had the intelligence and understanding that boys of his age usually have. *Williamson* v. *Sheldon Marble Co., supra.* Consideration must be had of the character and condition of the machine, the nature of the work required of him, the place where and the circumstances in which it was to be performed, his age, experience and capacity, and his opportunity to observe and comprehend his surroundings. Upon a careful consideration of the whole case, we think the danger to which he fell a victim was so apparent that the law will impute to him knowledge and appreciation of it, and therefore that he assumed it. Everything about the machine and its operation was so simple that it seems incredible that he should not have understood that his hand, if caught, would be drawn into the machine just as the garment was. The very purpose of the machine was to seize and carry in whatever came within its grasp. It cannot be that this would not, almost at a glance, be fully understood by a reasonably bright boy of practically sixteen years,—not a child of tender years, but one who by his age should have been well started in the high school.

Something was said in evidence and much in argument about a tendency in the machine to draw the operator's hands into it. This testimony obviously related to the natural operation of the machine, merely. It is not possible that the slowly revolving parts could have created any suction to increase the hazards of its operation. The tendency existed only so long as

the operator kept his hold of the garment. It was obviated by the simple act of letting go.

Many cases are to be found wherein the courts have applied the principles herein discussed to cases involving accidents resulting from the operation of ironing and similar machines. Some sustain our conclusion, and some do not. The rules are sufficiently established, but an attempt to apply them to actual cases results in some confusion. This comes principally from the varying estimates which different courts put upon the intelligence of the party injured.

While each case must, in a large measure, depend upon its own facts, and for that reason caution should be exercised in selecting precedents, the following are near enough in their facts to the one under consideration to be cited in support of our conclusion: *Lowcock* v. *Franklin Paper Co.,* 169 Mass. 313, 47 N. E. 1000; *O'Keefe* v. *Thorn,* (Pa.) 16 Atl. 737.

*Judgment reversed and judgment for the defendant to recover its costs.*