DALLAS FAIR PARK AMUSEMENT ASS'N
v. BARRENTINE.   (No. 996.)

(Court of Civil Appeals of Texas.   Amarillo.
May 17, 1916.   On Motion for Rehearing, June 23, 1916.)

1. MASTER AND SERVANT ☾154(1) — MASTER'S LIABILITY—WARNING A MINOR SERVANT.

The purpose of the rule requiring a master to warn and instruct a minor servant is to give information of unknown and unappreciated dangers, and, if the minor knows and appreciates the risks and dangers of his employment, the reason of the rule does not exist, and the law does not impose an unnecessary act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 308; Dec. Dig. ☾154(1).]

2. MASTER AND SERVANT ☾158—WARNING MINOR SERVANT—NEGLIGENCE—PROXIMATE CAUSE.

If a minor servant really possesses the knowledge, understands the risk, and appreciates the danger, the master's failure to warn is not the proximate cause of his injury, without which there can be no actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 304; Dec. Dig. ☾158.]

3. MASTER AND SERVANT ☾154(1)—ASSUMPTION OF RISK—KNOWLEDGE—MINOR.

A minor must not only know the danger, but also the extent, and have the capacity to appreciate it, in order to assume the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 308; Dec. Dig. ☾154(1).]

4. MASTER AND SERVANT ☾289(1) — MASTER'S LIABILITY — CONTRIBUTORY NEGLIGENCE.

If a servant assumes the risk, the question of contributory negligence does not arise, for

by his assumption of the risk he absolutely precludes himself from a recovery for any injury that may result to him from such danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089; Dec. Dig. ☾289(1).]

5. MASTER AND SERVANT ☾204(1)—EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

Under Employers' Liability Act (Acts 33d Leg. c. 179) § 1, par. 3 (Vernon's Sayles' Ann. Civ. St. 1914, § 5246h), assumed risk as a defense is eliminated in cases to which the act applies.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 544; Dec. Dig. ☾204(1).]

On Motion for Rehearing.

6. MASTER AND SERVANT ☾154(1)—PERSONAL INJURY—MINOR—ASSUMPTION OF RISK.

A minor, aged 19, who for 2 years prior to the accident had been working about a merry-go-round and who had been closing the doors during different periods of such time, who was directed to close the doors after the lights were out, and who knew the danger of stumbling over stobs, set in the ground between the doors, as well as the master, was not entitled to warning not to stumble over the stobs.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 308; Dec. Dig. ☾154(1).]

7. APPEAL AND ERROR ☾1066—PREJUDICIAL ERROR—INSTRUCTIONS.

Where the master was not required to warn a minor servant to be careful of stobs standing in the ground between the doors inclosing a merry-go-round, the charge that a failure to warn if a man of ordinary prudence would have done so was material error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☾1066; Trial, Cent. Dig. § 558.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Thomas Barrentine against the Dallas Fair Park Amusement Association. Judgment for plaintiff, and defendant appeals. Reversed and remanded for a new trial.

W. H. Atwell, of Dallas, for appellant. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellee.

HENDRICKS, J.   Thomas Barrentine, the appellee, was injured while in the employ of appellant, the Dallas Fair Park Amusement Association, at a merry-go-round. This particular merry-go-round was about 225 feet in circumference and 60 feet in diameter. It was inclosed by a series of doors, about 75 in all, the doors being about 3½ feet in width.   In the center of the inclosure were the horses upon metal carriages, with sufficient room to make the circuit within the inclosure and to leave walking space for the patrons to get on and off the horses and still remain within the building or the main inclosure.   The upper portion of the doors was glass, and at each unit there were two doors, swinging back to back, which could be fastened together and held in that position, and between each of the doors was a stob, driven into the ground, from 1 foot to

3½ feet in height, according to the variation in testimony. The doors, when open, were also probably fastened to these stobs. The appellee, at different times, for about 2 years prior to the accident, had been working around the carousel and, according to his own testimony, was familiar with the different kinds of work in the operation of said amusement feature. At the particular time, when the accident and injury occurred, the appellee was working "extra" and not on "weekly pay roll," though prior thereto he had enjoyed a considerable term of continuous employment. According to plaintiff's theory, the manager of the merry-go-round had ordered him to turn out the electric lights in that part of the inclosure where the accident occurred, and after a short intervening time he was also ordered, with others, to close the doors, containing the glass panels mentioned, preparatory to closing for the night; that in performing the particular work one of the doors would not close readily, and, in making the effort, he stumbled against one of the stobs, lost his balance, and in the attempt to guard his fall, pushed his hand and wrist through the glass panes of the particular door, producing the infliction of a severe wound, the loss of considerable blood, and the severing of some of the tendons in the wrist of that arm. He testified, on account of the turning out of the lights, it was "too dark to see a stob on the outside." On cross-examination, he testified:

"I have been closing those doors ever since I had been there for nearly 2 years. I have been going to those stobs every night, but I have never been warned about them. * * * I did not have to be warned about running over the stobs, * * * but I did not know anything about what the danger was of those stobs; I never had been told about it being dangerous to stumble over those stobs. If anybody had given me any warning about those stobs being dangerous, I certainly would have watched them. * * * I do not think that the reason I got hurt was solely on account of the fact that I had not been warned not to stumble over those stobs; that is not altogether the reason; it was on account of the darkness."

The appellee was 19 years of age at the time of the injury; had been working at the particular merry-go-round at intervals, for about 2 years, as stated, and had been upon his own responsibility for several years, independent of his father's control and support. The stobs had previously been painted white. The paint, however, had worn off by the weather and time, and the stobs were of the color of the ground. The inference is conclusive that appellee understood the details of the work contributing to the operation of the merry-go-round, and was thoroughly familiar with the surroundings of its make-up, and the presence and situation of the stobs as an obstruction in walking around the carousel under any conditions, whether night or day; the latter part of this statement limited in its meaning by the fact that on account of the darkness he could not see the particular stob at the time injured.

The following is one of the grounds of the motion for new trial, constituting the ninth assignment of error, in appellant's brief:

"Because the court erred in the third paragraph of his charge to the jury, wherein he instructed the jury, in substance, as follows, to wit: 'And if you further find and believe from the evidence that a person of ordinary care, under the same or similar circumstances as you may find surround the defendant, would have warned plaintiff of such dangers or perils, if any, then you are further instructed that the defendant was guilty of negligence as the term is hereinafter used, because said charge placed a greater burden upon the defendant than the law requires, in that it required that the defendant should have warned the plaintiff even though the plaintiff knew of the danger of his employment; that is to say, the danger of stumping or stumbling or running against a stob which was driven into the ground.'"

[1] The purpose of the rule requiring the master to warn and instruct the minor servant is to give information of unknown and unappreciated dangers. If the minor knows and appreciates the risks and dangers of his employment, the reason of the rule requiring an employer to warn does not exist. The law does not impose an unnecessary act. Tucker v. National Loan & Investment Co., 35 Tex. Civ. App. 474, 80 S. W. 879; Wiggins v. E. Z. Waist Co., 83 Vt. 365, 76 Atl. 36; Ewing v. Lanark Fuel Co., 65 W. Va. 726, 65 S. E. 201, 29 L. R. A. (N. S.) 487; Mitchell v. Comanche Cotton Oil Co., 51 Tex. Civ. App. 506, 113 S. W. 158; Labatt on Master and Servant, vol. 3 (2d Ed.) § 1155.

[2] If the minor in reality possesses the knowledge, understands the risk, and appreciates the danger, the failure to warn is not the proximate cause of the injury, without which there can be no actionable negligence. Ewing v. Lanark Fuel Co., supra.

[3] Of course it is the rule in this state that a minor must not only know the danger, but also the extent, and have the capacity to appreciate the same, in order to assume the risk. Justice Gaines said:

"It is not sufficient that he knows the employment is dangerous, but he must also be aware of the extent of the danger, and have the discretion to understand the risk, before he can be held to have assumed it. These are questions of fact to be determined by the jury." Texas & Pacific Ry. Co. v. Brick, 83 Tex. 602, 20 S. W. 513.

Appellee says that the Brick Case is conclusive of this case on the question of assumed risk. The plaintiff in that case, at the time of the accident, was nearly 19 years of age, in the employment of the receiver of the railway company, as brakeman, in the switchyards of a city. He was on some coal cars, being pushed up the incline to a coal chute track, for the purpose of coupling onto a car standing upon the level. He was on the front car, in going up the incline, for the purpose of being present to make a coupling, and, when within a few feet of the stationary car on the level track, he jumped

from the moving car, struck a piece of coal, which turned with him, causing him to be thrown between the rails and injured. The track between the rails was not covered, and the coal chute was elevated several feet above the ground, constructed on a trestle. It was not distinctly shown "that he ever served upon the coal chute before the day of the accident," though he had served the receiver as brakeman for three months. He testified that if the track between the rails had been covered, he could have saved himself from injury. On the particular question, we do not believe, weighing the facts of that case and testing the decision as applied to the character of employment and the circumstances surrounding that plaintiff, that it is, by any means, wholly analogous to, and controlling of, this case. Quoting the syllabus of the case of Tucker v. National Loan & Investment Co., which fairly reflects the opinion (35 Tex. Civ. App. 474, 80 S. W. 879):

"An experienced farm hand, though a minor, is held to have assumed risks incident to loading sheaf oats on a wagon frame and riding thereon over a road well known to him, and cannot recover for injuries sustained by the oats sliding and causing him to fall."

Associate Justice Fly said, adopting the language of the Court of Appeals of New York:

"He is bound to take notice of the ordinary operation of familiar laws, and to govern himself accordingly; and, if he fails to do so, the risk is his own."

In that case the verdict was against the minor, but it was affirmed upon the theory that erroneous instructions were harmless because the facts of the case would have supported a peremptory instruction. The case of Houston & Texas Central Ry. Co. v. Martin, 21 Tex. Civ. App. 208, 51 S. W. 641, decided by Justice Williams, when on the Galveston court, discloses this condition: Appellee was a section hand, engaged in unloading cross-ties from a flat car upon a railway switch track, and was hurt by some of the ties from the car falling upon him. The particular car was moved by use of pinch bars inserted behind the rear wheels, and was stopped by thrusting a piece of scantling in front of the wheels. The plaintiff himself placed the end of the timber upon the rail, standing beside it, and holding it in front of him, and when the wheel struck it, the piece of timber struck him, knocking him down, and the jolt of the car, passing over the timber, caused the ties to fall off the car and upon appellee. Appellee was a minor, employed for more than 2 years at the section, and was familiar with the duties of his employment. Justice Williams said:

'The risk incurred seems clearly to have been one of those known to appellee to be incident to this particular service, and was therefore assumed by him. But, if not, it was open and patent; was in fact one which arose from the operation of the plainest natural laws. The facts affecting the risk were all known to him, as well as to any one else. He did not realize or foresee the danger, but it was one which,

with his knowledge of the facts, he was required to foresee as well as another. It arose from conditions open to his observation. * * * The fact that he acted under the foreman's direction or orders cannot avail him. There was no fact affecting the danger known to the foreman which was not also known to him."

The court reversed and rendered the case in favor of the railway company. Writ of error was refused. Apparently, upon superficial analysis, it might be said that the emphatic declarations of Justice Williams are weakened on account of the fact that appellee had "been cautioned by the foreman to be careful and avoid getting himself hurt." Evidently the decision did not turn upon the general warning suggested in the opinion. Of course we are not advised as to the actual terms of the warning given, but the one indicated in the opinion would not suggest to an employé any better method, or any greater appreciation, or cause the danger to be lessened, to the minor on account of such an instruction. The real principle controlling the case was based upon familiarity and knowledge of the minor with the particular character of work performed by him, and his experience in that particular business. The case of Producers' Oil Co. v. Barnes, 103 Tex. 515, 131 S. W. 531, decided by Justice Brown of the Supreme Court, and cited by appellee, is an authority detrimental, instead of in his favor. Barnes was a minor, and injured at night while standing on planks laid horizontally on the framework of a derrick, 45 feet above the ground, caused by his foot slipping on the planks. "Barnes was about 19 years old at the time of the accident. He had worked in other oil well derricks about two months before he commenced to work at this, but he worked upon the floor of the derrick and never upon the double boards. He had been at work at this place about 15 days when the injury occurred," and, upon the particular occasion, volunteered his services to the foreman, necessary to be performed at night upon the boards above the ground, as stated. It was alleged by him that there were no lights at the place where he was required to work in the nighttime; that there were water, mud, and oil accumulated upon the boards upon which he was required to stand; that the boards upon which he was required to stand were slanting so as to cause his foot to slip. The Supreme Court granted the writ of error because they were inclined to the opinion that the evidence did not show with sufficient certainty the negligence of the oil company, nor that the slant of the boards contributed to the injury which Barnes received. Justice Brown said:

"It is evident when Barnes went upon the double boards he knew there was no light in that part of the derrick; therefore he assumed the risks incident to the absence of the light. The undisputed evidence shows that the manner of doing the work necessarily caused water and mud to be upon the double boards, and

Barnes assumed the risk incident to that condition."

Upon the third question, as to the slanting boards, and as to the negligence of the company in allowing them to be slanted, Justice Brown, upon analysis of the testimony, resolved it in favor of Barnes, and upon that question alone affirmed the judgment. If not for that question, it is clearly deducible the cause would have been rendered. The case of Stamford Oilmill Co. v. Barnes, 103 Tex. 415, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, affords some analogy to the particular question at issue. Barnes was 12 years of age at the time of the injury; he was at the oilmill upon implied invitation sent by his father in company with an older brother on business, and as a licensee had the right to be at the mill. As we interpret, and test the case, the serious question was whether a boy of that age was entitled to a warning with reference to the dangers attendant upon the character of property owned and operated by defendant. There was a bridge, made for the use of employés hauling hulls in dump carts to be thrown into the "conveyor" of the oilmill. Young Barnes had walked to the part of the bridge over the conveyor and was watching its operation when, on being called by his brother and starting to leave, he was "overbalanced." He testified that he knew of the presence of the conveyor, and the effect of getting his foot into it, and "knew that the simple way to avoid that danger was to keep his foot out of the conveyor." Justice Williams said:

"It is necessarily true, therefore, that it was not from a lack of knowledge and experience, nor because of the absence of warning or restraint by defendant's employé, but from a mishap such as might be suffered by an adult as well as by one such as he, that the unfortunate boy suffered his injury."

He further said:

"We do not mean that contributory negligence is to be charged to the boy as a matter of law, but that the omission of the defendant in not instructing and protecting him does not constitute actionable negligence, since he had the knowledge which instruction would have given him, and knew how to avoid this particular danger."

[4] The question of contributory negligence is also pertinently raised by an assignment reproduced in the motion for new trial. "If he assumes the risk the question of contributory negligence does not arise, for by his assumption of the risk he absolutely precludes himself from a recovery for any injury that may result to him from such risk." St. L. & S. F. Ry. Co. v. Mathis, 101 Tex. 351–352, 107 S. W. 535.

The injury occurred subsequent to the enactment by the Thirty-Third Legislature of an act relating to employers' liability and changing the common-law rule with reference to contributory negligence, fellow servant, and assumed risk. Gen. Laws of Texas, pp. 429, 430 (Vernon's Sayles' Ann. Civ. St. 1914,

art. 5246h et seq.). This law provides that it shall not be a defense if an employé is guilty of contributory negligence, but in such event the damages shall be diminished in the proportion to the amount of negligence attributable to such employé. Section 1, par. 1. Paragraph 3, § 1, eliminates assumed risk as a defense unless the injury was caused by the willful intention of the employé, and section 2 of the act provides:

"The provisions of this act shall not apply to actions to recover damages for * * * personal injuries sustained by domestic servants, farm laborers, nor to the employés of any person, firm or corporation operating any railway as a common carrier, nor to laborers engaged in working for a cotton gin, nor to employés of any person, firm or corporation having in his or their employ not more than five employés."

The cause was tried in March, 1915, in the district court of Dallas county, and we feel persuaded that able counsel in this case were cognizant of the terms and purport of the act. The case was tried, however, as being controlled by the principles of the common law affecting the questions of negligence and assumed risk, and involving the proposition of minority, without any mention in the brief or in the argument therein of the statute. The cause having been pitched upon those lines, we are regarding it, as to this particular record, as controlled by those principles. We are assuming that under the view of counsel as to the provisions of this act, on account of the record not showing that appellant did not have in its employment more than five employés, the act does not apply. This court held the act constitutional, in the case of Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309, and repeated the holding in the case of Postex Cotton Mill Co. v. McCamy, 184 S. W. 569.

[5] If, upon another trial of the cause, proof should be different, and the act applicable, the matter of assumed risk as a defense is, of course, eliminated. As stated, at common law, assumed risk precludes contributory negligence in ending the case, and Chief Justice Phillips, in the case of G., H. & H. R. Co. v. Hodnett, 106 Tex. 194, 163 S. W. 13, presents a clear disquisition of the difference between the defenses. If the act applies, the cause, of course, should be tried under that act. The case of Railway Co. v. Mathis, supra, by Chief Justice Gaines, presents on certificate an opinion upon assumed risk, as well as contributory negligence, answering both questions of the Court of Civil Appeals. An engineer was guilty of assumed risk, by falling into the unlighted pit of a turntable, in passing from the roundhouse of a railway to the depot, because he chose that path of travel instead of another which was safer. After so deciding, Chief Justice Gaines said:

"As pointed out in the case of Texas & Pacific Railway Co. v. Bradford, 66 Tex. 732 [2 S. W. 595, 59 Am. Rep. 639], between the doctrine of assumed risk and contributory negli-

gence, as applicable to such case, in contributory negligence the question usually arises, What would a prudent man have done under the circumstances? If a prudent man, under the exigencies of the case, would have taken the chances and acted as plaintiff acted, he is acquitted of negligence."

He also cited the case of Gulf, Colorado & Santa Fé Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227, holding that it was a question for the jury whether a plaintiff, who knew of certain defects on a bridge and crossed it, and was injured, was guilty of contributory negligence, although there was another safe way he may have gone and thus avoided the injury. Upon the facts propounded in the certificate the Supreme Court, in the Mathis Case, held Mathis guilty of assumed risk, though not conclusively guilty of contributory negligence. In this case, appellee Barrentine, testified that he was ordered to turn out the lights, and after a short period of time he was then ordered, with others, to close the doors for the purpose of discontinuing the business for the night. The care he used in the performance of his duty is not very clear in this particular record. Cases, of course, can exist where an ordinarily prudent man can exercise care in the dark in performing his work and at the same time stumble over an obstruction, the position of which in the daytime he would be acquainted with.

Upon the condition of the record we do not think the case should be reversed and rendered on the doctrine of assumed risk; hence reverse and remand it for another trial.

### On Motion for Rehearing.

[6] Bearing in mind the ninth assignment of error, challenging the instruction of the court, on the question of the master warning the plaintiff, we have probably traveled from the main issue, to some extent, in the opinion. Applying the controversy over the rule, to the actual record as presented, the question is, Should the master be required to warn Barrentine, before he started around the inclosure, to close the doors, after the lights were out? He knew it was dark, and the inability to see the stobs was as imputable to him as any other person. He had been closing the doors during the different periods of time he had been engaged in work for nearly 2 years; he testified he did not have to be warned about running over the stobs, though he did say he did not know of the danger resultant from the stobs. Of course he did not have to be warned about running over the stobs, but, was he as cognizant of the danger in stumbling over the stobs, as the master? To say that the master, under such conditions, would have to warn a minor of the experience Barrentine is shown to have had not to stump his toe upon the stobs it seems to us exceeds the limit of the persons attribut-

able by the law, requiring instructions to minors by employers. Bessey v. Newichawanick Co., 94 Me. 61, 46 Atl. 806; Wagner v. Plano Man. Co., 110 Wis. 48, 85 N. W. 643. There is no duty imposed upon the master to instruct a minor servant when he could not enlarge the minor's knowledge in the premises. Northern Alabama Coal, Iron & R. R. Co. v. Beacham, 140 Ala. 422, 37 South. 227. An employer is not required to instruct a 14 year old boy of average intelligence of allowing a portion of his body to project beyond the sides of an elevator on which his duties required him to ride, where he already knows that if he does so he is likely to be caught between the elevator and passing floors and injured. Cronin v. Columbian Mfg. Co., 75 N. H. 319, 74 Atl. 180, 29 L. R. A. (N. S.) 111. See, also, a discussion by Justice Presler, when on the Ft. Worth Court of Civil Appeals, in the case of Mitchell v. Comanche Cotton Oil Co., 51 Tex. Civ. App. 507-511, 113 S. W. 158.

[7] If the appellant was not required to warn the appellee, Barrentine, to be careful of the stobs, and avoid them, the charge that a failure to warn, if a man of ordinary prudence would have instructed Barrentine, constituted negligence was material error.

It is true that the criticism embodied in the particular assignment could have been leveled at the whole paragraph of the charge, on the particular question. However, we think the assignment, based upon the exceptions to the charge of the court, sufficiently raised the error to the trial court, as that we should regard it on this appeal.

The motion for rehearing is overruled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.