## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. FRELES. (No. 5297.)

(Court of Civil Appeals of Texas. Austin. March 4, 1914. Rehearing Denied April 15, 1914.)

1. MASTER AND SERVANT (§ 180*)—LIABILITY FOR INJURIES—NEGLIGENCE OF VICE PRINCIPAL.

Under Rev. St. 1911, art. 6641, providing that all persons engaged in the service of a railroad company intrusted with the authority to direct any other employé in the performance of any duty are vice principals and not fellow servants with their coemployés, a railroad company's foreman having authority to direct a boiler maker to assist in moving a boiler in the roundhouse was a vice principal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*]

2. NEGLIGENCE (§ 1*) — ACTS OR OMISSIONS CONSTITUTING—"ACTIONABLE NEGLIGENCE."

To constitute "actionable negligence" the act done or omitted must be one which a person of ordinary prudence would not have done or omitted and from which it ought reasonably to have been anticipated that injury would result.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 148, 149; vol. 8, p. 7563.]

3. MASTER AND SERVANT (§ 125*)—LIABILITY FOR INJURIES—UNANTICIPATED DANGERS.

A master's ignorance of the probable danger from an act or omission is not necessarily an excuse, as it is his duty to know what he could learn by exercising such diligence as the circumstances reasonably demand.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

4. MASTER AND SERVANT (§ 125*)—LIABILITY FOR INJURIES—UNANTICIPATED DANGERS.

Where an employer did not know of a danger and could not reasonably have discovered it by the exercise of such diligence as the circum-

stances reasonably demanded, he is not liable for an unforeseen injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

5. MASTER AND SERVANT (§ 97*) — LIABILITY FOR INJURIES—UNANTICIPATED DANGERS.

Plaintiff, an expert boiler maker and repairer, was directed to and did prepare a boiler for moving; the only practical method of moving it being by rolling it. While assisting in rolling it rapidly over soft ground covered by cinders by direction of the foreman, his glove caught in one of the studs of the boiler, a bolt projecting at least three-fourths of an inch, thereby throwing him over the boiler and in front of it resulting in injuries. *Held*, that the injuries were due to an inevitable accident, and not to the employer's negligence, since the foreman owed no duty to plaintiff to inspect the boiler, and, even had he inspected it and discovered the bolt, he was not as an ordinarily prudent man required to anticipate danger therefrom, especially as no superior or technical knowledge or experience was required to know whether or not there was danger, and plaintiff therefore was as capable of estimating the danger as the foreman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. § 97.*]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by W. C. Freles against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

E. B. Perkins, of Dallas, and Scott & Ross, of Waco, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, and J. D. Williamson, of Waco, for appellee.

### Findings of Fact.

JENKINS, J. 1. Appellee was a boiler maker and repairer, and was engaged in that business as an employé of appellant. Appellant's foreman ordered appellee to dismantle an upright boiler, which had theretofore been in use by appellant for the purpose of moving the same out of the way. Appellee testified: "In order to dismount it there was a bunch of pipes and several different things on it that had to be taken off; the fire door, the injector, and I don't know what all there was on it. I undertook to disconnect every piece of iron or pipe or anything of that kind that was attached to the boiler, and undertook to disconnect it before I took it down from its place. I undertook to disconnect all of the pipes and pieces of machinery of every kind that was attached to the boiler in any way that would prevent rolling, take it loose from it before we began to move the boiler. We took everything from it that would prevent rolling."

2. As thus prepared for being moved, the boiler consisted of a round piece of steel or casting, 10 or 15 feet long and about 4½ feet in diameter, weighing about four tons. Appellant's foreman ordered appellee and ten other employés to move this boiler to the place where it was intended to leave it, some 10 or 12 feet beyond the turntable; this space was covered with cinders. The boiler was turned onto its side, rolled on the iron rails leading to the turntable, a distance of about 125 feet. The turntable was turned so that its side upon which was the boiler was next to the cinders, and the foreman then gave orders, the intent of which was that the employés should roll the boiler off of the turntable and across the cinders, to the place where it was to be deposited. There was a bolt, about ¾ of an inch in diameter, and extending out of the boiler about 2½ inches. This bolt caught in appellee's leather glove, and jerked him over the boiler and in front of it. The boiler rolled upon and injured him as alleged in his petition. He recovered judgment for $10,000 damages. It is not contended by appellant that the damages are excessive.

3. Appellee alleged: "That it was desired by defendant to remove a certain boiler, upright when in position, but which had then been taken down, out of the roundhouse, in which roundhouse there was a turntable probably 60 feet or more long, the boiler being about 10 feet long and about 4½ feet in diameter, and weighing about 4 tons. That said Miller (appellant's foreman) in the course of his authority for defendant of superintendence, control, and direction as aforesaid, then and there commanded, ordered, and directed plaintiff and his co-workmen, being ten in number, to move said boiler out of said roundhouse, first onto the turntable, and, after turning the turntable so as to avoid rolling the boiler across the rails (which could not be done), then to roll it over cindered or soft ground to the place at which it was intended to be put, outside of the roundhouse, so as to get it out of the way. That after the men had rolled said boiler onto the turntable and it was ready to be moved off the turntable, or about that time, Miller then and there commanded, ordered, and directed the men, including plaintiff, in substance to apply all their strength to the movement of such boiler, so that it would have velocity enough to cross the soft ground over which it had to pass, saying in substance, if not in exact words, 'Boys, get her to going good and hard, so that we can get her across that soft ground,' and after same had started, saying in like manner again: 'Give it to her boys! Come on with her!' That pursuant and in obedience to said commands, directions, and orders so given, the men pushed the boiler as hard as they could, the ten of them with great velocity, at and about which time, being within a few seconds after obedience to such requirement so begun, plaintiff's glove or sleeve caught in one of the studs of the boiler, being a bolt with threads on it, projecting about ¾ of an inch, and probably about 2½ inches thick, whereby he was thrown over the boil-

er, it moving with great velocity as aforesaid, and fell on his head and right hip and other parts of his body, and the boiler rolled over his arm and his head and body down to the lower part of his breast plate, before it could be stopped, by means whereof he was caused to suffer serious and permanent injuries."

The evidence sustains these allegations. Appellee further alleged:

"That plaintiff is informed and believes, and so states, that the usual and proper method to have pursued in the moving of said boiler, which was entirely practicable, was to put planks down over the soft earth, which planks were there available for the purpose, so as to avoid the great velocity so directed to be applied to said boiler, as aforesaid, and to this method no objection could be urged except that it would take a little more time.

5. "That the defendant, by its said agent, Miller, was negligent towards plaintiff in giving aforesaid orders, and each of them for the moving of said boiler, and in adopting the method he did in moving same, and in not adopting said usual and proper method of moving the same, and such negligence was a proximate cause of aforesaid injuries to plaintiff, without which same would not have happened.

6. "That plaintiff's regular and usual work was that of a boiler maker, as aforesaid, but he was under duty by his employment to do whatever he might be told to do by his said superior, Miller, or suffer discharge, although outside of his regular and usual employment; and thereof said defendant, through said Miller, knew.

7. "That plaintiff had previously aided in the moving of boilers for short distances by other methods, and he had rolled smaller boilers; but he was inexperienced in boiler moving by the method adopted on the occasion in question, and he had never before taken part in the moving of a boiler that way. That he was called upon to act in a few seconds when said orders were given, and obeyed the same without time for forethought or calculation, wearing his gloves and sleeves as he was accustomed to do, and as it was necessary for him to do in his work, to avoid hot engines, etc., and as he and others similarly engaged always did, and the danger of doing the work in which he shared at the time of said casualty was, under the circumstances of his environment at the time, not so glaring or obvious to him, particularly in view of his inexperience, that a man of ordinary prudence would have declined and suffered discharge, which would have been the penalty.

8. "That the method pursued on the occasion in question, of moving said boilers, was not reasonably safe, but threatened dangers in many ways or directions, so that the defendant by its said agent, in pursuing that method, might reasonably have anticipated or foreseen injury of some sort to employés engaged thereat, as a natural and probable consequence, or as likely to ensue."

9. It will thus be seen that the alleged grounds of negligence were: (a) That appellee was inexperienced in moving boilers by the method attempted; (b) that the danger was unknown to him, and under the circumstances was not obvious to him; (c) that the method used in moving the boiler was not the usual method; (d) that it was not a proper or safe method; and (e) that appellant's agent was negligent in giving the haste orders.

(a) As to appellee's experience, he testified: "I never in my life moved a boiler that way before. My general employment was boiler maker. I had never had any experience in moving a boiler that way." This testimony was not contradicted.

(b) The evidence sustains the allegation that the danger was unknown to him, and that it was not obvious to him.

(c) There was no testimony that the method adopted was not the usual method. The only evidence on this point was that of the foreman, who testified: "I had assisted in moving several boilers before this one. All of the boilers that I have ever seen moved and helped to move were just rolled right on the ground. Rolled them anywhere we wanted to; you can roll a round boiler on the ground."

(d) As to the method employed being a safe one (apparent safety) appellee testified: "I knew we were going to shove it over those cinders after we got started. * * * I did not have any idea or the least suspicion in the world that I was likely to have an accident, or there was any danger to me by reason of rolling that boiler fast. I never had time to think of it. It didn't occur to me at all until I was whirling over the boiler." Appellant's foreman testified: "It did not at any time before the injury occur to my mind that it was at all likely or probable that a man might be thrown over the boiler, and the boiler run over him. * * * That there was the slightest danger of any one connected with the handling of the boiler getting hurt in any way." No one testified that the danger was apparent or suspected. As to there being a safer method, appellant's foreman testified: "If I had put a plank down over the cinders and had ordered the boiler rolled over the plank, the cinders would not have given way so much. I think we could have rolled it along over the planks very much like we rolled it over the rails. That would have been a slow way of doing it. Yes, it is reasonable that we could have stopped the boiler, if for any reason it had been necessary, if we had been rolling it slow. There wasn't any particular rush about moving that boiler off. * * * If planks had been placed on those cinders and elevated

as high as the edge of the pit, and the boiler had been rolled over slowly, it would not have been as likely to hurt any one." This testimony was not contradicted.

(e) Appellant's foreman gave the haste order, as alleged by appellee.

10. Appellant alleged contributory negligence on the part of appellee in wearing leather gloves, while assisting in moving the boiler. The evidence does not show that appellee was guilty of negligence in so doing.

[1] 11. Appellant's foreman, Miller, had authority to direct appellee to assist in moving the boiler 'n the manner in which he undertook to move it, and therefore, under R. S. art. 6641, was the vice principal of appellee.

## Opinion.

In view of the disposition which we make of this case, it is unnecessary for us to pass upon any of appellant's assignments of error, except the first, which is as follows: "The court erred in refusing to give to the jury defendant's special charge No. 1, as follows: 'Gentlemen of the jury, you are charged that the plaintiff having failed to show any act or combination of acts sufficient to constitute negligence upon the part of the defendant railway company, acting through its foreman, you will therefore return a verdict for the defendant.' "

[2-4] In our opinion, appellee's injuries were received through inevitable accident, and that the facts as above stated fail, as a matter of law, to show negligence on the part of appellant, for which reason we sustain said assignment. By "negligence" as is here used we mean culpable negligence. It is not the doing of every act which results in injury to another, or the failure to do everything that could have been done to avert such injury, that is negligence in a legal sense. To constitute negligence the act must be one which a person of ordinary prudence would not have done, or would not have omitted to do, as the case may be; and from which act or omission it ought reasonably to have been anticipated that injury would result. Ignorance of the master as to the probable danger is not necessarily an excuse, for it is his duty to know whatever he could have learned by the exercise of such diligence as the circumstances reasonably demanded of him. But when he does not know of the danger and could not reasonably have discovered the same by the exercise of such diligence, and an unforeseen injury occurs, it is not by his negligence, but upon pure accident.

[5] We do not think that it can be said, generally speaking, that rolling an iron cylinder 10 or 15 feet long and 4½ feet in diameter, on a turntable and over ground covered with cinders, is a dangerous business. What fact was known to appellant's foreman, or could have been known to him by the exercise of ordinary diligence, that rendered such act dangerous in this case? Was it his duty to inspect the boiler? As to the other ten employés, perhaps so; but as to appellee, who was an expert boiler maker and repairer, and who had been instructed to prepare the boiler to be moved, and who must have known that it was to be rolled, as that was the only practical method of moving it, did not the foreman have the right to presume that appellee had removed everything that would interfere with safely rolling the boiler to the place where it was to be deposited? Had the foreman inspected the boiler ever so carefully, would he have discovered anything to suggest to the mind of a reasonable man that some of the employés might be injured in rolling the boiler? He might have discovered the bolt. Would that have suggested danger? Evidently the appellee knew that the bolt was there. He testified that it did not suggest any danger to his mind. Presumably he was a man of ordinary prudence. It is not always true that the master will not be responsible where the facts are equally as well known to the servant as to him, for, in some instances, though the servant knows the facts, he may not realize the danger which the master, by reason of his superior knowledge, ought to apprehend. But in the instant case it required no superior or technical knowledge or experience in rolling boilers to know whether or not there was danger in rolling this particular boiler in the manner and under the circumstances that it was rolled. It does not appear that the foreman knew that appellee was wearing his gloves. That fact was known to appellee, and he did not anticipate any danger therefrom; nor do we think as an ordinarily prudent man he was required to do so. If the danger was apparent, we do not see how appellee could escape the contention of appellant that he was guilty of contributory negligence, he being in possession of all the facts, and as capable of estimating the dangers as was the foreman. We do not think that the injury was the result of negligence upon the part of either the foreman or of the appellee. Of course, if there had been no bolt on the boiler, and if the foreman had not ordered it to be rolled rapidly, and if appellee had not had on gloves, the injury would not have occurred in the manner that it did. But, as said in Nolan v. Shickle, 3 Mo. App. 300, "probably scarcely a mishap occurs where the wisdom which comes after the event cannot suggest some expedient by which, through the exercise of more abundant caution, the accident might not have been prevented."

For the reasons stated, the judgment of the trial court is reversed, and here rendered for appellant.

Reversed and rendered.