MUNN *v.* MICHIGAN STATE TELEPHONE CO.

MASTER AND SERVANT—PERSONAL INJURIES—ACCIDENTAL INJURY—NEGLIGENCE.

> In an action for personal injuries by an employee against his employer, evidence that as plaintiff and another employee were attempting to get into a wagon they accidentally bumped together and plaintiff fell and was injured, *held*, insufficient to establish negligence rendering defendant liable.

Error to Kalamazoo; Collingwood, J., presiding. Submitted April 30, 1919. (Docket No. 88.) Decided May 29, 1919.

Case by Bert J. Munn against the Michigan State Telephone Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Alfred J. Mills,* for appellant.

*Claude S. Carney,* for appellee.

MOORE, J. On October 23, 1912, about 30 days after the workmen's compensation act had gone into effect, and before the defendant telephone company had elected to come under its provisions, the plaintiff was employed as a lineman by defendant. He with other employees left Battle Creek by interurban railway early on the morning of October 23d for Augusta, where an ordinary farm wagon and team of horses was hired for use in their work. About noon the team was unhitched and the men took dinner at a farm house. After dinner the team was rehitched to the wagon and the men were preparing to start to work. On either side of the wagon and between the wheels, there was a step with a board across the top of it which was level with the bottom of the wagon box and about 30 inches from the ground. In getting into the wagon plaintiff was hurt. He spent part of the afternoon on a blanket laid upon the ground and claims he caught cold which later developed into tuberculosis. He recovered a substantial verdict and the case is brought here by writ of error.

After the opening statement of counsel for plaintiff a motion was made in behalf of defendant for a directed verdict which the court denied. At the conclusion of plaintiff's case the motion was again pre-

sented and again denied. It was renewed at the close of the testimony and also denied. Counsel for defendant also presented certain requests to charge, all of which were denied except as covered by the general charge. After the verdict a motion was entered in behalf of defendant for judgment in its favor, notwithstanding the verdict, which motion was denied. A motion for a new trial was entered in behalf of defendant, which was denied. The court was requested to file reasons for the denial of defendant's motion for a new trial, if denied. He did so and required plaintiff to consent to a reduction of $1,500 of the verdict or submit to a new trial. The plaintiff filed a consent to remit $1,500 of the verdict.

Error is assigned as to each of the above mentioned acts as well as to the charge of the court as made. Each of these assignments is argued at length. As we think an answer to the question whether the judge should have directed a verdict must dispose of the case, we shall not further refer to the other assignments of error.

At this point it may be well to refer to the testimony which describes the accident. The testimony of the plaintiff was in part as follows:

"In the afternoon I had an accident. We were preparing to move to another station and getting in the wagon. We got our tools all loaded. Mr. Case and Mr. Bell had jumped into the front seat and I was getting in the right hand side and the driver got on the left hand side and I was standing on the step with my right foot, putting my left foot over the top, the box, and I was leaning over a little to balance in, when the driver jumped into me. I want to correct that, I was getting in on the left hand side of the wagon, looking towards the team, and the driver got in on the right hand side. He bumped his head against my shoulders and threw me backwards, and as I fell my foot went between the wagon and the wheel and my leg got between the two, I suppose, and the team start-

ed at the same time, and twisted my left leg, as I fell over backwards; my leg was drawn between the box and the wheel, my left leg, and ground and crushed it."

We quote part of his cross-examination:

"I had gotten in wagons before and knew how to do it. I would have no difficulty in doing it under ordinary circumstances. I have done it quite often. I think I had done it on the afternoon of the day of the accident. * * * The foreman and one of the helpers got on to the seat of the wagon in front and I was attempting to get into the wagon on the left hand side. I was just stepping over the box, just going to step over the edge of the box into the wagon. I did not put my right leg over the box. I was standing with my left foot on the step. The step was right level with the bottom of the wagon. I stepped up there with my left foot, my right foot I should say. When the head of the other man on the other side of the wagon struck my shoulder, I was standing upright leaning forward a little bit and raising my foot to put it over the box. I got up from the ground and was practically standing on this step 30 inches from the ground. I was entirely clear of the ground and clear of the wheels and as he struck me, I tipped over backwards. Up to that time the team had stood there perfectly still. I don't think it had moved at all. I did not fall clear of the wagon. I hung on the seat with my left hand, as long as I could. There was a front seat. I hung on the back of the front seat with my hand, back of the front seat and fell from there when the wagon caught my left leg. The front wheel caught it. * * * I was very friendly with all these men. There was no trouble, or ill feeling or anything of that kind among us. I haven't any reason to think this man who was attempting to get into the wagon on the other side from me had any ill will or anything. We were good friends and good feeling between us."

Mr. Scanlon was called as a witness on the part of the plaintiff. We quote from his testimony:

"At the time of the accident we were working in Augusta, I think in Calhoun county. On that day we

were repairing the lines. I kept the tools to help the linemen out that way. On the day of the accident Mr. Case, Mr. Munn and Mr. John Bell were working in the crew on this job. It was right after dinner. We had just finished on one job and were just starting up the line a little bit and just four of us started to move. I went to jump on the wagon on the right hand side of the wagon. We both jumped on the steps on the right hand side of the wagon. My head collided with his shoulder and upset him and he fell. I struck him with my head on the shoulder, we both jumped on at the same time. I jumped from the step into the wagon. He was not standing on the wheel but on the steps. There were steps on both sides of the wagon between the rear and front wheels. Neither one of us jumped into the other, but happened to collide when we were getting into the wagon at the same time. I struck him with my head on his shoulder and right arm. He lost his balance and went over the side of the wagon. I didn't really push him over, but he lost his balance and went over. He didn't lose his balance until after I struck him with my head. I looked at his leg when he limped around and we thought it was slight at first, we didn't think it was as bad as it was."

This is substantially all of the testimony as to the happening of the accident. It does not disclose actionable negligence on the part of the defendant, but does disclose an accident that nobody could or did anticipate. See *Sjogren* v. *Hall*, 53 Mich. 274, *Wickham* v. *Railway*, 160 Mich. 277 (52 L. R. A. [N. S.] 1082, 136 Am. St. Rep. 436, Ann. Cas. 1913E, 1069), and *Lydman* v. *De Haas*, 185 Mich. 128. The judge should have directed a verdict for the defendant.

The case is reversed, without a new trial, and with costs to the defendant.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.