HORN *v.* PARKE, DAVIS & CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—NEGLIGENCE—COMMON LAW DEFENSES.

Although the common-law defenses of contributory negligence, unless wilful, assumed risk, and negligence of a fellow servant are no longer available to a master who has not elected to come under the workmen's compensation act (2 Comp. Laws 1915, § 5423), in an action by a

Contributory negligence as a defense to an action based on a breach of the master's statutory duty, see note in 49 L. R. A. (N. S.) 526.

servant for personal injuries, the latter may not recover unless the master is guilty of negligence.

2. SAME — NEGLIGENCE — SAFE PLACE — EVIDENCE—SUFFICIENCY— QUESTION FOR JURY.

Evidence that a vat, into which plaintiff slipped, severely scalding his leg, was not a safe place, because not properly guarded, rendering the master guilty of actionable negligence, in an action thereon, *held*, insufficient to present a question for the jury. MOORE and BIRD, JJ., dissenting.

Error to Wayne; Hunt (Ormond F.), J.   Submitted June 17, 1921.   (Docket No. 85.)   Decided October 3, 1921.

Case by Frederick A. Horn, an infant, by his next friend, against Parke, Davis & Company for personal injuries.   Judgment for plaintiff.   Defendant brings error.   Reversed, and no new trial ordered.

*George J. Haines (Campbell, Bulkley & Ledyard* and *Horace W. Bigelow,* of counsel), for appellant.

*Lodge & Brown,* for appellee.

Defendant maintains in its business biological laboratories, having in connection therewith stables and buildings in which are kept animals large and small.   These animals are inoculated with germs of a particular disease which is being studied and its progress watched; temperatures are taken from time to time, and if the animal dies a *post mortem* examination is held.   To dispose of the carcasses after the *post mortem* defendant maintains in one of the rooms a vat or tank 3 feet, 4 inches deep, 3 feet, 5 inches wide and 7 feet, 5½ inches long.   Fitting inside of this is a removable iron cage or basket perforated on the sides.   The top of the vat is even with the floor and is covered with heavy planking, and when not in use in reducing carcasses the room is used by defendant as a passageway.   Water and steam pipes are

connected with the vat and the outflow is through pipes into a manhole on the outside of the building where there are valves which may be opened and closed.    Over the vat is a track conveyer used in moving the basket and the plank cover.    If the animal is a large one the carcass is cut up, put in the basket, conveyed to the vat and the basket or cage is lowered into the vat.    The method of reduction is this:    After the basket containing the carcass has been put in the vat it is filled with water in which is placed disinfectant, the cover is placed in position and the steam is turned on.    This is done in the afternoon about 5 o'clock and left until the following morning when the reduction is usually completed.    In the morning the valve or valves in the manhole are opened, the hot water drawn off and the remains of the carcass disposed of.    Scrupulous cleanliness about the place is essential to prevent inoculation.    The vat had been thus operated for over 15 years without accident of any kind.

Plaintiff entered the employ of defendant in its biological laboratories when he was about 17 years old.    He was a little past 18 years of age at the time of the injury.    He was at first given the care and observation of the smaller animals but soon learned to assist the man in charge of the reduction of the carcasses and when this man left he took his place. On July 2, 1917, a *post mortem* examination of a horse was held and plaintiff cut up the carcass, put the pieces in the iron cage, lowered it into the vat, filled the vat with water, put in the disinfectant, put on the cover and turned on the steam before quitting work.    On the following morning plaintiff returned to work about 7:30.    The floor was wet from condensed steam as it always was when the reduction process was in operation.    Plaintiff removed the cover of the vat and went out to open the valves in

the manhole.   One of them stuck and he went inside to get an iron bar used in such cases, slipped into the vat and one of his legs was severely scalded.   He brought this action and recovered a substantial verdict.   The parties were not under the workmen's compensation act.

FELLOWS, J. (*after stating the facts*).   But one question is presented on this record, and that is whether any negligence of defendant is shown.   Defendant asked for a directed verdict on the grounds that there was no evidence of negligence on its part, that plaintiff's slipping into the vat was an accident pure and simple, a mishap, for which it is not responsible in this action.   While the common-law defenses of contributory negligence unless wilful, assumed risk and negligence of a fellow servant are no longer available to the master (2 Comp. Laws 1915, § 5423), the servant cannot recover against the master unless the master is guilty of negligence.   *Lydman* v. *DeHaas*, 185 Mich. 128; *Wudlick* v. *Railway Co.*, 203 Mich. 689; *Munn* v. *Telephone Co.*, 206 Mich. 201; *Smith* v. *Hyne*, 208 Mich. 334.   If the injury is the result of a mishap, an accident pure and simple, and there is no negligence of the master which constitutes the proximate cause of the injury, there can be no recovery against him.   Plaintiff invokes the doctrine of "safe place," and testified that the erection of a barrier around the vat consisting of an iron pipe would not interfere with the operation of the vat. But it is obvious that such a barrier if permanent would not only interfere with the place as a passageway but make it absolutely hazardous for that use. Plaintiff's counsel unsuccessfully attempted to prove on cross-examination of defendant's witnesses that a temporary barrier was in any degree practical considering the uses to which the premises are devoted.

While this court has in a long line of cases not necessary to cite sustained the doctrine that the master's duty required him to furnish a reasonably safe place for the servant in which to labor, we have as consistently held that the master is not the insurer of the safety of the servant and that he discharges his duty in the absence of a statute when he exercises due care, the care that an ordinarily prudent man would exercise in providing for the safety of the servant. It was said by Chief Justice COOLEY, speaking for the court, in *Sjogren* v. *Hall*, 53 Mich. 274:

"A similar accident, attended by equally serious consequences, might happen almost anywhere, in any machine-shop or on a farm as well as in a mill, and after it had happened it could be readily seen how it might have been avoided. But the fact that it was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from the hay-mow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith-shop might have his hand or even his head thrown under the trip-hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible."

In Baldwin on Personal Injuries, p. 397, it is said:

"If the accident is one which an ordinarily prudent man would not have anticipated, it becomes immaterial that a very small expense would have prevented the accident in question, by providing a barrier or any other simple device. All machinery, but especially that operated by steam, is more or less dangerous under any circumstances. In a great many cases, however, injury results from some prior, improbable, antecedent accident, not anticipated by either the master or the servant, as where a servant accidentally trips

and in falling his hand or foot is thrown into exposed machinery. The duty of the master only extends to guarding against probable dangers, but does not go to the extent of requiring him to render accidental injuries impossible."

See, also, *Richards* v. *Rough,* 53 Mich. 212; *Schroeder* v. *Michigan Car Co.,* 56 Mich. 132; *Hewitt* v. *Railroad Co.,* 67 Mich. 61; *Burke* v. *Parker, Webb & Co.,* 107 Mich. 88; *Palmer* v. *Harrison,* 57 Mich. 182; *Kaaro* v. *Ahmeek Mining Co.,* 178 Mich. 661.

In *Balle* v. *Detroit Leather Co.,* 73 Mich. 158, plaintiff's decedent was drowned in a vat in the tannery of defendant by whom he was employed. There was no eyewitness to the accident. In the work the platform between the vats became slippery and there was a box standing there. Either the deceased slipped or tripped over the box and thus fell into the vat. We held that he assumed the risk and that there was no evidence of negligence on the part of the defendant.

In *Buckley* v. *Manufacturing Co.,* 113 N. Y. 540 (21 N. E. 717), plaintiff, a boy of 12, slipped and his hand was caught in cogs and injured. The doctrine of safe place and of want of instruction were there involved. The court said:

"It is impossible to perceive, from the evidence, what the defendant could have done to avoid the accident. The machine was not imminently dangerous. The hands of the plaintiff, in anything which he had to do or was doing about the machine, would not come within nine inches of the cogs where he was injured. It was not needful to instruct him that the cogs were dangerous, because that was obvious. He could see as well as anybody that if his fingers got into the cogs they would be crushed into pieces. He was not injured because he did not know that the cogs were dangerous, but the injury happened because he slipped and fell and instinctively threw out his hand to recover himself. His falling was a mere accident, and no amount of instruction or caution from the agents of the defendant would have prevented the accident

and saved him from the injury. His injury did not come from any ignorance of the machines or of the danger to which he was exposed, but it came solely from the accident."

In *St. Louis, etc., R. Co.* v. *Freles* (Tex. Civ. App.), 166 S. W. 91, the employee was injured by his glove being caught in a bolt on a boiler he was assisting in moving. In denying liability, it was said by the court:

"In our opinion, appellee's injuries were received through inevitable accident, and that the facts as above stated fail, as a matter of law, to show negligence on the part of appellant, for which reason we sustain said assignment. By 'negligence' as is here used we mean culpable negligence. It is not the doing of every act which results in injury to another, or the failure to do everything that could have been done to avert such injury, that is negligence in a legal sense. To constitute negligence the act must be one which a person of ordinary prudence would not have done or would not have omitted to do, as the case may be; and from which act or omission it ought reasonably to have been anticipated that injury would result. Ignorance of the master as to the probable danger is not necessarily an excuse, for it is his duty to know whatever he could have learned by the exercise of such diligence as the circumstances reasonably demanded of him. But when he does not know of the danger and could not reasonably have discovered the same by the exercise of such diligence, and an unforeseen injury occurs, it is not by his negligence, but upon pure accident."

We quote the syllabus in *Venbuvr* v. *Lafayette Worsted Mills*, 75 Atl. 264, a Rhode Island case:

"A master, maintaining a ventilating machine, which could not injure any servant unless he inserted his hand within the blower, was not liable for injury to a servant, slipping on the floor and thrusting his hand into the blower, where a prudent man would not anticipate such an accident as within the bounds of probability."

This case does not fall within that class of cases where a servant or invitee falls into an unknown pitfall on the premises, and that class of cases is inapplicable. Numerous cases will be found, however, where the injury was occasioned by a slip, or by tripping of the employee where liability has been denied on the ground that no negligence of the master has been proved, that the injury was due to a mishap, an accident pure and simple. Some of the cases couple with these grounds the doctrine of assumed risk, not applicable here. Among these cases see *American Tobacco Co.* v. *Adams*, 137 Ky. 414 (125 S. W. 1067); *Logan* v. *Lumber Co.*, 160 Ky. 295 (169 S. W. 707); *West* v. *Packing Co.*, 86 Kan. 890 (122 Pac. 1024); *Wilson* v. *Railway Co.*, 108 Va. 822 (62 S. E. 972); *Decker* v. *Stimson Mill Co.*, 31 Wash. 522 (72 Pac. 98); *McRea* v. *Hood Rubber Co.*, 187 Mass. 326 (72 N. E. 1015); *Bessey* v. *Newichawanick Co.*, 94 Me. 61 (46 Atl. 806); *Kern* v. *Welz & Zerweck*, 151 App. Div. 432 (136 N. Y. Supp. 412). In the last cited case it was said:

"But beyond this, the floor and drain arrangements of this washroom were not a 'way' within the meaning of the statute; it was merely a place provided for the plaintiff to perform certain incidental services in connection with other employees who were engaged in washing out the beer kegs, and the place being constructed and equipped in a manner concededly well adapted to its main purpose, and not exposing the plaintiff to any undisclosed dangers in the performance of his incidental duties within the room, it is idle to contend that there was any liability on the part of the defendant.  *  *  *

"The real truth is that the situation did not suggest to any one that it was dangerous. The room had been prepared for certain work and it was well adapted to that work, and there was no reason to apprehend the accident which actually happened. It did not occur to the plaintiff, although he knew all about the situation, that the defendant could have

known by the most rigid inspection, and the master is not liable because he has failed to anticipate an accident which reasonably prudent men, looking to the situation before the accident, would not have anticipated."

A consideration of the authorities, and we have by no means cited all that have been examined, is persuasive that defendant is correct in its contention that no actionable negligence has been established, and that this unfortunate injury was due to a mishap, an accident pure and simple.

It follows that the judgment must be reversed without a new trial.

Steere, C. J., and Wiest, Stone, Clark, and Sharpe, JJ., concurred with Fellows, J.

Moore, J. (*dissenting*).   I think the question of negligence was for the jury and that the judgment should be affirmed.

Bird, J., concurred with Moore, J.