PRODUCERS OIL COMPANY V. VANDA B. BARNES.

No. 2084.  Decided November 2, 1910.

**1.—Master and Servant—Negligence—Dangerous Place to Work.**

A servant in the employ of a company boring a well for oil, while working at night, standing on planks laid horizontally on the frame work of a derrick, forty-five feet above the ground, was injured by his foot slipping, causing him to catch and crush his hand in the moving wheels of the hoisting tackle. Held: (1) He assumed the risk arising from the absence of light at the place he occupied by entering upon the service with knowledge that such place was unlighted. (2) He could not recover for alleged negligence in permitting the planks on which he stood to become slippery from mud and water, since the proof showed that such condition was necessarily caused by their contact with the pipes hoisted from the well from time to time·by the tackle. (3) The fact that the derrick was out of plumb, causing the planks on which he stood to slope toward the center of the derrick, was, under the evidence here considered, properly submitted to the jury to determine whether such condition established negligence on the part of the master and proximately contributed to cause plaintiff's injury, and an affirmative finding thereon would support a recovery though other causes, for which the master could not be held liable, contributed to the result. (Pp. 516–521.)

**2.—Same—Voluntary Service.**

A servant who volunteers to work in a certain place, the service being within the scope of his employment but the question being which of several employees should undertake it on that occasion, is entitled to recover for injuries received in such service by the master's negligence. He does not assume the risks of one who is a mere volunteer. (Pp. 521, 522.)

**3.—Charge—Affirmative Error.**

An instruction to find for defendant if certain facts were established could not be held affirmative error to defendant's prejudice, though not all the facts enumerated were necessary to establish his defense.   (P. 522.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Barnes sued the oil company and recovered judgment.   Defendant appealed, and on affirmance obtained writ of error.

*Hutcheson, Campbell & Hutcheson,* for plaintiff in error.—Where the evidence shows that the servant himself deliberately seeks the course of action which led to his receiving the injuries complained of, he must obviously be regarded as having taken upon himself the responsibility for any personal harm which he may receive as the proximate result of the selection thus made.   St. Louis & S. F. R. R. Co. v. Mathis, 101 Texas, 342; 1 Labatt on Master & Servant, sec. 258; International & G. N. v. McCarthy, 64 Texas, 632; St. Louis S. W. Ry. v. Hynson, 101 Texas, 543.

Where one volunteers to do work he passes, as to such work, and while engaged in it, out of the service of the master, and the master owes him no duty of care, and if he is injured while in the performance of such voluntary work he is entitled to no compensation. Allen v. Hixson, 36 S. E., 810; Mellor v. Merchants Mfg. Co., 23 N. E., 100; Werner v. Trautwein, 25 Texas Civ. App., 609.

It is not enough to authorize the submission of a question as one of fact to a jury that there is some evidence, a scintilla of evidence or surmise that there may have been negligence on the part of the defendant would not justify the judge in leaving the case to the jury.   Joske v. Irvine, 91 Texas, 581; Galveston H. & S. A. v. Faber, 77 Texas, 155; Buckley v. Gutta-Percha & R. Mfg. Co., 21 N. E., 717; Mitchell v. Comanche C. O. Co., 113 S. W., 158.

The Court of Civil Appeals erred in affirming the judgment of the court below, because the evidence wholly failed to connect plaintiff's injury with any act of negligence of the defendant as the proximate cause thereof.   Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; Jones v. Ft. Worth & D. C. Co., 47 Texas Civ. App., 596; Paris & G. N. Ry. Co. v. Robinson, 114 S. W., 662; Chicago, R. I. & G. Ry. Co. v. Latham, 115 S. W., 891; Omaha & R. V. R. R. Co. v. Clark, 25 L. R. A., 509; Childs v. American Express Co., 84 N. E., 128; International & G. N. Ry. Co. v. Ormond, 64 Texas, 489; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Ryan v. Fall River Iron Works, 86 N. E., 310; Leonard v. Miami Mining Co., 78 C. C. A., 518; Patton v. Texas & P. Ry. Co., 179 U. S., 659; Wells-Fargo Express Co. v. Boyle, 100 Texas, 577; Missouri, K. & T. Ry. Co. v. Greenwood, 40 Texas Civ. App., 252; Reynolds v. Galveston, H. & S. A. Ry. Co., 99 S. W., 569.

Eighth ground of error (petition for writ of error).—The court erred in overruling applicant's twentieth assignment of error, page 84 of original brief, as follows:

The court erred in paragraph eleven of its general charge, which said paragraph is as follows:

"The ground of negligence set up by plaintiff in his petition for recovery is, that the double-board was sloping to such an extent as to be unsafe, and that mud and water had been allowed to accumulate upon it, and that there was no light furnished about the double-board, and he alleged that each and all of these things occurred and existed, by reason of the negligence of the defendant or its agents in charge of the work, and the burden of proof is upon the plaintiff to prove these facts by a preponderance of the evidence, or some of them, that his injuries were the proximate result thereof, and unless such facts have been so established you will find for defendant." And in overruling defendant's motion for new trial based on this ground.

Because said paragraph does not require the plaintiff to prove that the company was negligent in any particular, and because said paragraph permits the plaintiff to recover, in case mud and water was on the double-board, and in case there was no light furnished about the double-board, whereas, on the uncontroverted proof, plaintiff assumed risk from these matters, and they could furnish no ground of recovery. Said charge was distinctly erroneous in that it grouped a great many facts or conditions, some of which, standing alone, would not constitute a cause of action, and then charged that the plaintiff might recover upon proof of (some) of these facts, without specifying the facts necessary to recover on, thus authorizing the jury to find for plaintiff, even though he had not proved the essential element of a cause of action.

*Lovejoy & Parker,* for appellee.—Whether negligence was the proximate cause of appellee's injury was clearly a question for the jury under the evidence. Mexican Natl. Ry. v. Mussette, 86 Texas, 719; Gulf, C. & S. F. Ry. v. Hayter, 93 Texas, 242; Texas & P. Ry. v. Bigham, 90 Texas, 225; Milwaukee & St. P. Ry. v. Kellogg, 4 Otto, 469; Book 24, L. Ed., 257 et seq.

The court, in the charge complained of, was not undertaking to submit appellee's grounds of recovery; he did that in other paragraphs of the charge, in each of which he required the jury to find negligence as alleged by appellee to exist as a condition to returning a verdict for him. The jury could not have failed to understand that they must find the negligence alleged in appellee's petition to exist in fact before they could return a verdict for him. International & G. N. Ry. v. Von Hoesen, 99 Texas, 647; International & G. N. Ry. v. Trump, 100 Texas, 209 et seq.; Womack v. International & G. N. Ry., 100 Texas, 453 et seq.

MR. JUSTICE BROWN delivered the opinion of the court.

This suit was instituted by Vanda Barnes against the plaintiff in error to recover damages for personal injuries received under the state of facts given below:

The company was engaged in boring an oil well at Humble and employed the defendant in error to work at said well. The work was accomplished by use of the means hereinafter stated. A derrick was constructed which was about twenty feet square at the

bottom extending to a height of eighty-four feet, the size of which at the top is not given in the statement of facts, so far as we have seen, and is unimportant. The structure consisted of pieces of timber at each of four corners of the dimension of ten by two inches and of sufficient length to reach from the bottom to the top. There was a floor at the bottom of the derrick and in the center the well was being bored. At a point about forty-five feet above the floor pieces of timber were fastened to the uprights of the derrick so as to hold them together and strengthen the structure. Upon two of these pieces of timber, called girts, or ribs, were laid two boards, or pieces of plank, which were called "double-boards." In this derrick the double-boards were placed upon the west side of the center, and the cable and block hereinafter described passed up and down to the east of the double-boards. The well was being bored with a four-inch pipe with a bit upon the end of it, and by the use of methods not necessary to describe here the pipe was sunk into the ground, and when one piece had been sunk below the surface another was attached and sunk as the first, continuing in that manner to the completion of the work. For the purpose of lifting this pipe out of the well when necessary there was what the witness called a rig, that is, there was at some point above the place where the double-boards were situated a block with wheels in it which were called sheaves, and there was also located at a place not given a drum. A cable was coiled around the drum and one end passed through the blocks which were above the double-boards. The end of this cable was attached to a block in which were three sheaves, or wheels, called the traveling block. To remove the pipe from the well the traveling block was lowered and was fastened to the pipe in a way not made clear in the testimony, whereupon the power was applied and, by the motion of the drum and the winding of the cable, the pipe, thus fastened to the traveling block, was lifted out of the ground up to the double-boards. In boring the well with the pipe water was used, and when the piping was removed from the well it brought with it water and mud and oil, if oil had been reached. In handling the pipes they necessarily came in contact with the double-boards and deposited water, mud and oil upon them. The witnesses stated without contradiction that there was no way in which to avoid this deposit.

Barnes was about nineteen years old at the time of the accident. He had worked in other oil well derricks about two months before he commenced to work at this, but he worked upon the floor of the derrick and never upon the double-boards. He had been at work at this place about fifteen days when the injury occurred, being engaged all the time on the floor of the derrick. The injury occurred at night. There were five men and the driller, named Carter, who was the boss of the men engaged in this work, and they had assembled on the floor of the derrick to begin work when one of the men who had been working in the derrick, that is, on the double-boards, asked, "Who will go up the derrick tonight?" to which no one responded, and young Barnes said: "If nobody else will go, I will." Carter was in charge of the men with authority

over them. He heard what was said but did not tell Barnes to go or forbid him to go. Carter knew that Barnes went up on to the double-boards to perform the services up there, and an older brother of Barnes said, in substance, to Carter: "That kid ought not to go up there; he does not know what he is doing."

Young Barnes went up the ladder to the double-boards where there was no light for use. After he had gotten up there the men lifted two pieces of pipe one at a time up to him and he received and handled them thus: when a piece of pipe was brought up by the traveling block Barnes would wait until the traveling block was above his head and then he would remove the belt which was around the pipe below the collar of it and the men at the lower end would place it at the proper point on the floor and Barnes would place the upper end behind what was called the finger-board to hold the pipe in its proper position. When the third piece of pipe was not quite high enough for Barnes to release it from the block, he was standing on the double-boards in his position for service, and his left foot slipped off the double-boards, which threw him forward, and he threw out his hand, catching the traveling block and his hand was caught in the wheels, or sheaves, in that block and three of his fingers were mashed off and others injured.

The derrick was not exactly plumb; the traveling block, when let down near to the floor, hung about six inches from a true line from the upper block to the well. The defendant in error testified that he did not know what caused his foot to slip; it was dark; he could not see so as to tell anything about it. The brother of plaintiff, E. Barnes, testified to the fact that the derrick was out of plumb, as above stated, and that this condition would make the double-boards slant to the east, or to the inside of the derrick. He also testified that he had worked the night before at the same place, performing the same services there and that his foot slipped on the double-boards. We have stated all the testimony that we have been able to find which would tend to show the condition of the double-boards. There is nothing to show to what extent the double-boards were slanting, whether it was much or little, nor is there any testimony to show whether there was water and mud and oil upon the double-boards that night, except the fact that in handling the pipes they would come in contact with the double-boards and necessarily leave the deposit of mud and water thereon. It was necessary for the man who served on the double-boards to reach out and take hold of the pipe, pulling it towards him until he was able to release it from the moving block.

The writ of error was granted in this case because we were inclined to the opinion that the evidence does not show with sufficient certainty the negligence of the oil company, nor that the slant of the boards contributed to the injury which Barnes received.

The question for our determination is, does the most favorable view of the evidence constitute such degree of proof as authorized the jury in an honest effort to arrive at the truth to find the verdict which they did in this case? The questions which were submitted to the jury were: (1) Was the place unsafe for the work to be

done by Barnes? (2) Was defendant negligent in furnishing the place at which Barnes worked in the condition that it was? and (3) Did the negligence of the defendant in so furnishing an unsafe place contribute to the injury received?

The plaintiff's petition alleges three particulars in which the oil company was negligent and which rendered the place unsafe: (1) That no light was placed at the point where Barnes was required to work in the night-time. (2) That there was water and mud and oil accumulated upon the double-boards upon which Barnes was required to stand in order to perform his labor. (3) That the boards upon which Barnes was required to stand in the performance of his services were slanting so as to cause his foot to slip off and that his foot did slip off in consequence of the condition of the double-boards.

In testing the correctness of the verdict we must give the plaintiff the benefit of the best phase of the testimony and give to it the greatest force that the jury could have allowed in arriving at their verdict. Under the facts of the case we must treat this question as if Barnes was engaged at the time in the discharge of duties for which he was employed.

It is evident when Barnes went upon the double-boards he knew there was no light in that part of the derrick, therefore he assumed the risks incident to the absence of the light. The undisputed evidence shows that the manner of doing the work necessarily caused water and mud to be upon the double-boards and Barnes assumed the risk incident to that condition. This reduces our inquiry to the question, did the evidence authorize the jury to find that the double-boards were slanting, that they caused or contributed to the injury and that their condition rendered the place unsafe for the work which Barnes was employed to do? It must also appear that the company was negligent in permitting the boards to be in that condition.

The derrick, of which the boards were a part, was out of plumb and leaned to the east. This would tend to show that the level of the boards which rested upon the ribs of the derrick were also out of plumb and slanted to the east. E. Barnes, a brother of the plaintiff, who worked in the same place at another time, testified that the double-boards slanted, and that while he was upon the boards at work his foot slipped on them. The description given of the construction of the derrick and the double-boards, the manner in which the work was done, justified this conclusion, that while engaged in the service there the plaintiff necessarily stood near to the edge of the double-boards, facing east, that is, in the direction of the center of the derrick, and the evidence also authorized the conclusion by the jury that the double-boards slanted to the east, the direction in which Barnes' face would be. The plaintiff testified that while he was standing upon the edge of the double-boards waiting for a piece of pipe to be brought up by the rig, just as the block was getting up near to him his foot slipped off the board, that is, it must have slipped to the east in order to have gotten off the boards, and that in order to save himself he put out his

hand upon the block which was then near to him, and in so doing his fingers were caught and the injury inflicted. Upon the issue of the slanting of the double-boards the evidence is largely circumstantial, and the inference drawn as to the character of these boards and their condition is based upon such circumstances as make it quite necessary that we should be careful in interfering with the conclusion of the jury. There is evidence to establish the fact that the double-boards were slanting to the east, and we are of the opinion that the jury was justified in so finding. The company was chargeable with notice of the slanting of the boards and that water and mud would be deposited thereon. The question then arises, would a man of ordinary prudence under the same circumstances, having due regard for the safety of his employes, have permitted the double-boards to be and remain in that condition? The surrounding circumstances would properly be considered by a jury; the work was being done in the night and without a light at a place where necessarily there would be a deposit of water and mud which would as a matter of common knowledge render it liable to cause the servant engaged thereon to slip and fall from the boards. Now, with such surroundings and under such conditions can it be said that the company exercised that degree of care and diligence that would have been exercised by a man of ordinary prudence under like circumstances to guard the safety of the employe engaged in that work? We are of opinion that the facts and circumstances in the case justified the jury in concluding that the company was guilty of negligence in furnishing the place at which Barnes was at work when injured.

Did the slanting condition of the boards contribute to the injury which Barnes received? It does not matter that there were other causes which might also have contributed to the injury inflicted upon the plaintiff; it is sufficient if the slanting of the boards contributed proximately to his injury. (29 Cyc., 496.) The testimony shows that the brother of Barnes, who had been at work there on a previous occasion, had slipped upon the boards, which tends to prove that the place was unsafe for such uses. The slipping of the foot might naturally occur from the fact that the boards were slanting in the direction in which his face was turned, and it is entirely consistent with the existence of all of the other facts and circumstances which surround the case. The jury were the judges of the weight of the testimony which was before them and it was within their province to determine whether there was greater probability that the accident occurred on account of the slanting of the boards or some other cause that was present which might have also caused the accident or contributed thereto. We conclude that there was sufficient evidence to sustain the verdict of the jury.

The plaintiff in error assigned the refusal of the court to give charge No. 5 requested by the defendant. This charge requested the court to instruct the jury that Barnes was a volunteer and therefore assumed all the risks incident to the work performed. The court properly refused to give the instruction, for the reason that the testimony justified the conclusion that the work being per-

formed by Barnes was within the scope of his employment, which evidence was ignored by the charge.

There are a number of assignments made upon the argument by counsel for the plaintiff to the jury, but we will not review them in detail, they do not constitute such error as will authorize this court to interfere with the verdict.

The charge given by the court which was challenged by the eighth assignment in the petition for writ of error was in favor of the defendant, therefore, could not constitute an affirmative error of which the defendant could complain.

We find no error in the judgment of the Court of Civil Appeals, and it is therefore affirmed.