**TEXARKANA & FT. SMITH RY. CO. v. SMITH.** (No. 3009.)

(Court of Civil Appeals of Texas. Texarkana. March 5, 1925. Rehearing Denied March 19, 1925.)

**1. Master and servant** ⟨⟩278(3)—**Jury's finding of railroad's negligence, causing lineman's death by drowning, held warranted.**

In action for death of railroad lineman from drowning in which federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) was applicable, evidence *held* to warrant jury finding that defendant was negligent, and that such negligence was proximate cause of employee's death.

**2. Master and servant** ⟨⟩288(5)—**Whether lineman drowned assumed risk held for jury.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of railroad lineman from drowning, when directed to go to telegraph pole whether lineman assumed the risk from deep water *held* for jury.

**3. Master and servant** ⟨⟩150(2)—**Railroad's duty to warn lineman of danger.**

Where railroad lineman was drowned when directed to go to telegraph pole, it was railroad's duty to ascertain shape of strip leading to pole and depth of water on sides thereof, and to advise decedent of danger he would incur in obeying command to tie wires on pole.

**4. Master and servant** ⟨⟩205(1)—**Lineman entitled to assume safety of way.**

Lineman, who was drowned while returning from telegraph pole on which he had worked, had right to assume that master had discharged its duty as to warning him of any danger, and to conclude from failure to warn him that way was safe.

**5. Master and servant** ⟨⟩293(7)—**Instruction held not erroneous, because not requiring jury to determine whether depression under water rendered way dangerous.**

Instruction requiring jury to find that there was a deep depression along route deceased was to travel to and from telegraph pole, and to find that his death by drowning was due to his stepping into depression, *held* not erroneous, because not requiring a finding that way was a dangerous one.

**6. Appeal and error** ⟨⟩216(2)—**Any error of omission in instruction held harmless.**

Any error of omission in instruction *held* harmless where it did not appear that defendant sought to have omission supplied by requesting a special charge, which, if given, would have supplied omission.

**7. Master and servant** ⟨⟩286(3)—**Whether railroad was negligent, as to lineman drowned, held for jury.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of lineman, drowned while going to telegraph pole, exact depth of depression and distance from way which deceased was required to travel, *held* for jury in determining whether defendant was negligent.

**8. Trial** ⟨⟩194(19), 240—**Instruction held not erroneous as being argumentative or on weight of testimony.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of lineman, drowned while going to telegraph pole, instruction authorizing verdict for plaintiff if lineman's foreman knew or realized danger in ordering him to go to telegraph pole, *held* not erroneous as being argumentative or on weight of testimony.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Trial ⟨⟩194(19)—Instruction held not erroneous as being on weight of evidence.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665) for death of lineman by drowning, instruction authorizing verdict for plaintiff, if lineman's foreman failed to furnish lineman with boat or line while going to telegraph pole, *held* not erroneous as being on weight of evidence.

**10. Master and servant ⟨⟩286(4)—Whether railroad's failure to furnish lineman with boat or line was negligence held for jury.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665) for death of railroad lineman by drowning, whether railroad's failure to furnish lineman with boat or line or both for use in going to and returning from pole near deep water was negligence *held* for jury.

**11. Trial ⟨⟩296(2)—Failure to prepare charge applicable to all issues held harmless.**

Failure of court to prepare charge applicable to all issues, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1970, was harmless, where omissions therein were fully supplied by special charges prepared by one of litigants, and given to jury at his request.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Mrs. Pearl R. Smith, individually, as administratrix, and as next friend of her minor children against the Texarkana & Ft. Smith Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

George H. Smith, 23 years of age, employed by appellant as a "telegraph lineman" to assist a gang of men engaged in repairing its line of telegraph along the west side of its line of railway through the Sabine river bottom, near Ruliff, in Jefferson county, was drowned in waters of said river May 20, 1922. This suit for damages for his death was commenced and prosecuted by appellee as the administratrix of his estate, and also by her in her individual capacity, as his widow, and on behalf of their two minor children, as next friend, on the theory that said Smith's death was proximately due to negligence on the part of the foreman (one Morrow) and the assistant foreman (one Hight) of the gang of men engaged in doing the work specified. The appeal is from a judgment in appellee's favor as administratrix for the sum of $21,000.

It was admitted at the trial that the case on its facts was within and that the rights of the parties were determinable with reference to the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).

It appeared from testimony heard, the jury had a right to say, that facts as follows were established: Sabine river ran about east and west, and appellant's line of railway ran about north and south. Ruliff was on the south side of the river, and there were several bridges at places in the bottom between it and the river. It was near the one of these bridges known as "6740," 249 feet long, that Smith was drowned. That part of the river bottom was then under water from an overflow of the river or its tributaries. West of the bridge, and about 30 feet from it, a telegraph pole stood in water 16 to 20 inches deep. On the south side of the pole, and 12 or 15 feet from it, was a deep slough, which ran northeast to and then on under the bridge; and on the north side of the pole, and about the same distance from it, was a deep ditch, which ran southeast to the bridge and on under it. The V-shaped strip of comparatively high land thus formed was 25 or 30 feet wide where the telegraph pole was situated, and between 15 and 30 inches wide at the point thereof nearest the bridge. That point was 2½ or 3 feet from piling supporting the upper part of the bridge. "It," (the V-shaped strip of land) a witness said, "runs to a very sharp point, and on each side of that point it just shoots off right straight down." A few feet back from the sharp point toward the telegraph pole the strip was about 50 inches wide, and a few feet further toward said pole it was 6 or 7 feet wide. The part of the strip forming the bank of the ditch zigzagged "out and in a little bit," a witness said. The water between the point of the strip and the piling was about 5 feet and 8 inches deep. Muddy water from the slough and ditch united in covering the part of the strip between the point thereof and the telegraph pole to a depth of from 16 to 20 inches. The deceased and one Staley, another member of the gang of men, were engaged in "tying in" wires on the insulators on the telegraph poles. In doing that work, deceased tied the wires on one of the poles while Staley tied them on another. It was the custom for the one of them who first finished tying wires on a pole he was working on to move to the next one of the poles in the direction they were going. Working that way, Staley should have gone to the pole mentioned above as standing in water about 30 feet from the bridge, and tied the wires thereon, but Hight, the assistant foreman, directed the deceased to go instead. With reference to his reason for doing that Hight, as a witness, testified that deceased—

"was a younger man than Staley, and wasn't afraid of water, Staley was afraid of deep water, and couldn't swim, and I sent Staley out to the next one and sent Smith (the deceased) out to this pole because he wasn't afraid of deep water and because Staley's watch was broken. Staley had started to take his watch off to give it to Hartley. I first asked Smith if he would take that pole, and Staley started to take his watch off, and Smith told him he would take that pole. I had two things in my mind; one was that some part of Staley's watch was broken, and the other was that Staley couldn't swim and Smith could."

---

Hight testified further:

"I knew there was deep water around there, I knew there was deep water on each side, in the currents. · I knew there was a little knoll out there that wasn't under deep water, but I knew there was deep water north and south of it. I don't know whether the water north of it was over his head or not, but it was deeper there. I don't remember whether I thought the water south of it was over his head or not. * * * Some of them showed Smith how deep it was at the piling. * * * We told him there was deep water on each side."

Deceased at the time was wearing top boots, a safety belt with tools in it, and climbing spurs, together weighing, one witness said, between 20 and 25 pounds, and other witnesses said, about 12 pounds. In going to the pole in obedience to Hight's order, deceased climbed down the bridge piling opposite the point of the V-shaped strip of land referred to, and after getting on the strip waded to the pole and tied wires thereon to the insulators as was expected of him. When he was last seen by any of the witnesses, before he was discovered to be drowning on the east side of the bridge, he had tied the wires on the telegraph pole and, in returning to the bridge, had reached a point about half way between it and the telegraph pole.

Among other instructions to the jury given by the trial court in submitting issues made by the pleadings, and which the court thought were made by the testimony, were those contained in the second, third and fifth paragraphs of the charge, which appellant at the proper time objected to. Those paragraphs of the charge were as follows:

"II. Now if you believe from a preponderance of the evidence that on or about May 20, 1922, that the deceased, Geo. H. Smith, was in the employment of defendant as a telegraph lineman, at or near the railway bridge over the Sabine river near the town of Ruliff, and that while at work near a trestle the said deceased was directed by the foreman or assistant foreman of defendant to work on a telegraph pole standing in the overflow waters of said Sabine· river near said trestle, and that along the route to be traveled by deceased in going to or leaving said pole there was a deep depression in the ground underneath the surface of the overflow waters, and that in going to or leaving said pole the deceased stepped into said depression, if any, in said ground, and thereby was caused to lose his life by drowning; and if you further believe that the foreman or assistant foreman of defendant knew, or by the exercise of ordinary care could have known, of said depression, if any, in the ground underneath the surface of the overflow waters, and realized the danger, if any, thereof, and if you further believe that said foreman or assistant foreman of defendant, in directing the deceased to perform his work at such place where such depression, if any, existed, was 'negligence' as that term has hereinbefore been defined to you, and if you believe that said 'negligence,' if any, on the part of defendant's foreman or assistant foreman, was a proximate cause of the death of deceased, then you will find for the plaintiff unless you find for defendant under other portions of this charge, or special charges given.

"III. Or if you believe from a preponderance of the evidence that the foreman or assistant foreman of defendant failed to furnish the deceased with a boat in which to go to and return from said telegraph pole where deceased was to work, and that the said failure, if any, of defendant's foreman or assistant foreman to furnish deceased with a boat was negligence, as that term is hereinbefore defined to you, and you further believe that said negligence, if any, was a proximate cause of the death of deceased, then you will find for the plaintiff, unless you find for defendant under other portions of this charge, or special charges given."

"V. Or if you believe from a preponderance of the evidence that the defendant's foreman or assistant foreman failed to provide the deceased with a line or rope by which he might attach himself to said trestle in going or returning from his work on said telegraph pole, and that said failure, if any, was negligence as that term is hereinbefore defined to you, and that said negligence, if any, was a proximate cause of the death of deceased, then you will find for the plaintiff, unless you find for the defendant under other portions of this charge or special charges given."

At appellant's request, the court also instructed the jury as follows:

"1. As a part of the law by which you will be governed in the decision in this cause, the court charges you that if you believe from the evidence that prior to the time the deceased, George H. Smith, went into the water and out to the telegraph pole on which he was last seen at work before being drowned, the agents or servants of the defendant in charge of its work at said point had made, or caused to be made, measurements of the water at and about the place where George H. Smith went into the same, and from such measurements were led to believe, and did believe, that the water was not of sufficient depth at and about where the said George H.·Smith went into the same to endanger the safety of him in going into said water and out to said telegraph pole; and further believe that prior to the time the said George H. Smith went into said water at said place other servants of the defendant, with the knowledge of the defendant's agents and servants in charge of its work at said place, had gone into the water at the point where the said George H. Smith went into the same, and had gone out to and worked upon the same telegraph pole where the deceased was last seen working before he was drowned, and had returned in safety through the water to the bridge; and if you further believe from all these facts, if any, that the agents and servants of the defendant in charge of its work at said time and place believed that it was not unsafe for the said George H. Smith to go into said water at said time and place, and go thence out to said telegraph pole and work on same, and if such servants so in charge of its work believed that it was not unsafe for him to do so without the use of a boat, or without the use of a line, or without taking

other precautions for his safety, and that an ordinarily prudent man possessing the same knowledge and having made the same observations that were had and made by the said agents and servants of the defendant in charge of its work at said time and place would have so believed, and that an ordinarily prudent person in the same or similar circumstances would not have believed it necessary for the safety of the said George H. Smith to provide him with a boat or line, or to take other precautions for his safety, then and in the event you so believe, you will find for the defendant.

· "2. You are charged by the court as a part of the law by which you will be governed in a decision of this case that the deceased, George H. Smith, when he entered the service of the defendant assumed the risk of all such dangers as were ordinarily incident to or a part of the service in which he was engaged, and that he also assumed the risk of all dangers to him arising during his employment that he knew, or in the ordinary performance of his duties must necessarily have known, to have existed. Now, although you believe from the evidence that it was dangerous to George H. Smith to go into the water at the time and place he did go into the same, and go out to the telegraph pole upon which he was last seen working before his death, but further believe that the said George H. Smith knew of the danger, if any, in so going into said water and out to said telegraph pole, or that the danger, if any, in so doing was so obvious as that he must necessarily have known of such danger, if any, and you further believe that he went into said water and out to said telegraph pole and undertook to do the work thereon, with such knowledge of such danger, if any, then and in the event you so find, you will return a verdict for the defendant.

"3. If you believe from the evidence that when George H. Smith went into the water at the time and place he did just before being drowned, that he was shown and directed how to go and return in safety to and from the telegraph pole on which he was last seen at work before he was drowned; and if you further believe from the evidence that by following the directions so given him, if any, he could have gone to and from said pole in safety, and that he failed to follow the directions so given him, and that such failure, if any, to follow the directions so given him was the sole proximate cause of his being drowned, then and in the event you so believe, you will find a verdict for the defendant.

"4. If you believe from the evidence that the deceased, George H. Smith, in returning from work on the telegraph pole on which he was last seen at work before he lost his life, did not fall or get into water beyond his depth, but was affected with cramp, or some other malady which caused him to fall into the water, and that such cramp or other malady, if any, was the sole proximate cause of his death, then and in the event you so believe, you will return a verdict for the defendant."

King, Mahaffey & Wheeler, of Texarkana, for appellant. · ·

· Keeney & Dalby, of Texarkana, and Jones, Sexton, Jones & Buck, of Fort Worth, for appellee.

WILLSON, C. J. · (after stating the facts as above). The contention first presented in appellant's brief is that the trial court erred when he refused to grant its motion for a new trial on the ground, first, that the testimony did not warrant a finding that it was guilty of negligence as charged against it; and on the ground, second, that it conclusively appeared from the testimony that the risk incurred by the deceased in returning to the bridge from the telegraph pole was one he had assumed. We do not think the contention is tenable on either of the grounds urged.

[1] As to the first, if it did not conclusively appear, certainly the jury had a right to say it sufficiently appeared from testimony referred to in the statement above, that the way used by the deceased, and which he was directed by the assistant foreman to use, in going from the bridge to the telegraph pole, and which he was using in returning from the pole when he was last seen on the west side of the bridge, was a dangerous one, not only because of the deep water between the bridge and the point of the V-shaped strip ·of land on which the telegraph pole was situated but also because of the shape of the strip and the deep water on the north and south sides thereof. The jury had a right to say, further, that appellant knew, or in the exercise of proper care should have known, that. the way was an unsafe one. The jury had a right to say, further, we think, that the deceased was ignorant of the shape of the strip of land, and of the fact that the water on the north and south sides of it was dangerously deep, and that because he was ignorant of those facts he stepped into the ˙deep water on one or the other side of said strip of land as he was returning to the bridge, and as a result was drowned; and a right to say, further, that appellant knew of such ignorance on the part of the deceased, or if it did not know it at least had no reason to believe he knew such facts, and yet failed, when it directed him to do the work on the telegraph pole, to furnish him means for going to and returning from the pole with reasonable safety, and failed to ,warn him of the danger he would incur in attempting without such means to go to and return from the pole. Having a right to say that much from the testimony, it is clear enough, we think, that the jury had a right to conclude that appellant was guilty of negligence, which was a proximate cause of deceased's death when it directed him to go to the telegraph pole as he did. 18 R. C. L. 593, 596; 3 Labatt on Master and Servant, § 916; 1 Bailey on Master and Servant, 218, 220; Curry v. Atlantic Refining Co., 239 Pa. 302, 86 A. 856; Lavin v. Jones, 209 Mass. 8, 95 N. E. 219.

[2-4] As to the other ground of the contention, we think it did not appear as a matter of law that the risk was one the deceased had assumed. Of course, the fact that the way to the telegraph pole was through water

wás known to the deceased, and perhaps the testimony was sufficient to show that he knew the water was deep between the bridge and the point of the strip of land on which the telegraph pole was situated, but certainly it did not conclusively appear that deceased knew anything about the shape of the strip, nor anything about the depth of the water on the north and south sides thereof, and, as stated above, it was those things as well as the depth of the water between the point of the strip and the bridge that rendered the way unsafe. It was appellant's duty to ascertain the shape of the strip and depth of the water on the sides thereof, and to advise the deceased of danger he would incur therefrom in going to the pole and returning to the bridge in obeying its command to tie the wires on the pole. The deceased had a right to assume that appellant had discharged its duty in that respect, and to conclude from its failure to warn him to the contrary that the way was safe except for the deep water between the point of the strip and the bridge. 18 R. C. L. 593; Bonnet v. Galveston, H. & S. A. R. Co., 89 Tex. 72, 33 S. W. 334; Railway Co. v. Gant, 164 Ark. 621, 262 S. W. 654; Producers' Oil Co. v. Barnes, 103 Tex. 515, 131 S. W. 531.

It is next contended that the trial court erred when he overruled appellant's objection to the second paragraph of the charge to the jury, set out in said statement. The grounds of the objection, stated in the order they appear in appellant's brief, were that the instruction did not require the jury (1) to determine whether the existence of the depression therein referred to "rendered the way to be traveled by the deceased dangerous" or not; (2) whether it (the depression) was near the way or not; (3) nor whether it caused the water at the point where it was situated to be "beyond the depth of the deceased" or not; (4) that the instruction was argumentative and on the weight of the testimony; (5) was not warranted by testimony, because it conclusively appeared that deceased knew of the depression between the bridge and the strip of land on which the telegraph pole was situated; and (6) was not warranted because there was no testimony to support a finding "that the deceased was caused to be drowned by falling into any deep depression in the ground along the route necessary to be traveled by him in going to or leaving" the telegraph pole.

[5] As to the first ground of the objection, it will be noted that the instruction required the jury to find that there was a "deep" depression along the route deceased was to travel to and from the telegraph pole and to find that the death of deceased by drowning was due to the fact that he stepped into the depression. We think the jury could not have found that without in effect finding that the way was a dangerous one, for necessarily, it seems to us, a deep depression "under-

neath the surface of the overflow waters," and which, therefore, could not be seen, into which deceased could step in going to the telegraph pole and returning therefrom to the bridge, rendered the way a dangerous one.

[6, 7] But if the instruction was erroneous on the ground in question, the error was one of omission of which appellant has no right to complain, it seems, for it is not made to appear in the record sent to this court that it sought to have the omission supplied by requesting a special charge which, if given, would have supplied it. Modern Woodmen v. Yanowsky (Tex. Civ. App.) 187 S. W. 728; Railway Co. v. Russell (Tex. Civ. App.) 184 S. W. 299. What has just been said applies as well to the objection so far as it is based on the failure of the instruction to require the jury to find how deep the depression was and how near it was to the way to the pole from the bridge. This does not mean that we have doubt as to whether the objection was tenable on those grounds or not, for we are satisfied it was not tenable on either of them. The exact depth of the depression and its exact distance from the way were, of course, matters for consideration by the jury in determining whether appellant was guilty of negligence as charged against it or not, but they were evidentiary facts only, and not ultimate facts necessary to the validity of the judgment.

[8] We think the fourth ground of the objection is also plainly untenable, for we have been unable to see wherein the instruction was either argumentative or on the weight of the testimony.

As to the fifth ground, it might be conceded that the deceased knew that the water was deep between the point of the strip of land and the bridge, and yet it could not therefore be said that it conclusively appeared that he assumed the risk which resulted in his death, for, as stated above, it did not appear that he knew the shape of the strip of land, nor the depth of the water on the sides thereof, and appreciated the danger to be incurred in using the way in question.

The remaining ground of the objection, to wit, that the testimony did not warrant a finding that the deceased fell into a depression along the way between the bridge and the telegraph pole, has already, in effect, been overruled by what was said in disposing of the first contention.

[9, 10] Appellant objected to the third and fifth paragraphs of the court's charge to the jury, set out in said statement, on the same grounds, to wit, that they were, respectively, on the weight of the evidence, and that there was no evidence on which to predicate a finding that appellant was guilty of negligence, either in failing to furnish the deceased a boat, or in failing to furnish him a rope or line for use in doing the work he was directed to do, and on the ground, if there was

such evidence, that there was no testimony that negligence in either of such respects was a proximate cause of the drowning of the deceased. We do not agree that the instruction was on the weight of the evidence, and we think there was testimony on which the jury had a right to predicate such findings. In addition to testimony referred to in said statement, it appeared from testimony of the witness Goddard, which the jury had a right to believe, that Henry Smith, pumper at appellant's water tank near Ruliff, owned boats, and, on the morning of the day deceased was drowned, offered the use of same to appellant's foreman in charge of the work the deceased was engaged in, and at the same time warned said foreman that "that water (quoting) is deep and swift. It would be best to use them (the boats) at that second bridge down there"—which was the bridge from which the deceased went to the telegraph pole at the time he lost his life. It appeared from the testimony of the witness Vaughan that he and one Kelly, both employés of appellant, and engaged in trimming trees along appellant's right of way near said bridge, used a boat in doing their work. It appeared further from the testimony of said witness Vaughan that on the second day after the deceased was drowned, when, at appellant's instance, he went into the water at the bridge to make measurements to determine the depth of the water, he was equipped with a pike pole and had a rope tied around him, which was held by a gang of men on the bridge, and that he found the water so deep and so swift a few feet from the part of the bridge near the point of the V-shaped strip of land that he was afraid to venture into it, even with the protection furnished to him by the pike pole and the rope, and it appeared from the testimony of other witnesses that, at the time the deceased was directed to go to the telegraph pole, appellant had at hand a supply of rope, which it could have used in safeguarding him on his trip to said pole and back to the bridge. We are not prepared to say the jury did not have a right to conclude that an ordinarily prudent person, under the circumstances of the case as shown by all the testimony, would have furnished the deceased with a boat or a rope or line, or both, for use in going to the telegraph pole and returning therefrom to the bridge; nor are we prepared to say that the jury did not have a right to say that appellant's failure in that respect was actionable negligence on its part.

[11] In his main charge the trial court undertook to instruct the jury as to the law applicable to appellee's theory of the case, but did not instruct them as to the law applicable to appellant's theory thereof. Appellant complains that the effect of the court's action was to compel it "to resort (quoting from its brief) to the expedient of preparing special charges, and thereby having its defenses and the converse of the theories urged by appellee thus presented to the jury." In support of its complaint appellant argues that the purpose of the statute (article 1970, Vernon's Sayles' Statutes 1914) providing that unless it is waived the trial judge shall "prepare, and in open court deliver a written charge to the jury on the law of the case," was to require a trial judge—

"in his charge to submit to the jury the law applicable alike to both sides of the case," and that "it was manifestly not the purpose of the Legislature merely to require the court in its charge to submit one side of a case, as in this, the appellee's side thereof, and require the appellant, as in this case, to prepare and request special charges presenting its side of the same."

Doubtless it is true that the purpose of the statute was to require the court, in the absence of waiver, to prepare and deliver a written charge to the jury on the law applicable, not merely to some, but to all the issues made by the pleadings and the testimony in a case; but we do not think a failure of the court to comply with the requirement should operate to reverse a judgment where the omission or omissions in his charge were, as here, so fully supplied by special charges prepared by one of the litigants and given to the jury at his request.

Contentions presented in appellant's brief not in effect disposed of by what has been said are believed to be without merit and are overruled.

As we view the record error requiring a reversal of the judgment has not been shown, and therefore it is affirmed.

On Motion for Rehearing.

The statement in the opinion disposing of the appeal that if paragraph 2 of the court's charge was erroneous as specified in an objection made to it, the error was one of omission of which appellant had no right to complain, because it did not seek to supply the omission by requesting a special charge covering it, should be considered in connection with the dictum of the Supreme Court to the contrary in Railway Co. v. Conley, 260 S. W. 561, cited in the motion. The court in that case held that the error complained of in the instruction it was considering was an affirmative one, but plainly indicated the ruling would not have been different if it had appeared to be one of omission only.

The motion is overruled.